Lanzinger, J.
{¶ 1} In this appeal arising from a declaratory-judgment action to determine whether insurance coverage exists in a lawsuit involving injuries stemming from a misguided teenage prank, we are asked to apply the doctrine of inferred intent with respect to intentional-act exclusions. Because we decline to allow the intent to harm to be inferred as a matter of law in cases in which the harm suffered cannot be deemed an inherent result of the intentional act, we affirm the judgment of the court of appeals in part and remand to the trial court for proceedings consistent with this opinion.
I. Case Background
{¶ 2} On the evening of November 18, 2005, a group of teenage boys, including Dailyn Campbell, Jesse Howard, and Corey Manns, stole a lightweight Styrofoam target deer typically used for shooting or archery. The boys fastened a piece of wood to the target so that it could stand upright. Along with Carson Barnes, they then placed it just below the crest of a hill in Hardin County on County Road 144, a hilly and curvy two-lane road with a speed limit of 55 miles per hour. They put the target on the road after dark — between 9:00 and 9:30 p.m. — in a place in which drivers would be unable to see it until they were 15 to 30 yards away. The boys then remained in the area so that they could watch the reactions of motorists. About five minutes after the boys placed the target in the road, appellee Robert Roby drove over the hill. Roby took evasive action, but ultimately lost control of his vehicle, which left the road, overturned, and came to *188 rest in a nearby field. This accident caused serious injuries to both Roby and his passenger, appellee Dustin Zachariah.
{¶ 3} Roby and Zachariah[1] filed suits in the Franklin County Court of Common Pleas against the boys, their parents, and their insurance companies, among others, seeking recovery for the damages sustained in the accident.
{¶ 4} Appellants Allstate Insurance Company (“Allstate”), American Southern Insurance Company (“American Southern”), Erie Insurance Exchange (“Erie”), and Grange Mutual Casualty Company (“Grange”) filed declaratory judgment actions in the Franklin County Court of Common Pleas seeking a declaration that they are under no duty to defend or indemnify their insureds, the juveniles and their parents, in the Roby and Zachariah lawsuits.
{¶ 5} After consolidating the declaratory judgment actions, the trial court granted the insurance companies’ motions for summary judgment. Although the court did not find that the boys directly intended to cause harm, it inferred their intent as a matter of law, based in part on the finding that their conduct was substantially certain to result in harm. The trial court thus concluded that none of the pertinent insurance policies provided coverage and that none of the insurers had a duty to defend or indemnify its insureds in the pending bodily injury actions.
{¶ 6} The Tenth District Court of Appeals reversed, holding that genuine issues of material fact exist over whether the boys intended to cause harm when they placed the deer target in the road, whether harm was substantially certain to result from their actions, and whether those actions fall within the scope of their individual insurance policies. Allstate Ins. Co. v. Campbell, Franklin App. Nos. 09AP-306, 09AP-307, 09AP-308, 09AP-309, 09AP-318, 09AP-319, 09AP-320, and 09AP-321, 2009-Ohio-6055, 2009 WL 3823362, ¶ 53. The court of appeals expressed uncertainty regarding the strength of inferred intent in Ohio but noted that appellate courts have expanded the doctrine beyond the crimes of murder and molestation. Id. at ¶ 39. The Tenth District Court of Appeals stated that there was no dispute that the boys had acted intentionally; the disputed issue was whether they had intended harm or injury to follow their intentional act. Id. at ¶ 50. The court concluded that because questions of fact remained over the certainty of harm resulting from the boys’ actions, their conduct did not support an objective inference of an intent to injure as a matter of law. Id. at ¶ 53.
{¶ 7} We granted discretionary jurisdiction over the second proposition of law of each insurer, as well as the third proposition of law of Allstate and Grange.[2] *189 Allstate Ins. Co. v. Campbell, 124 Ohio St.3d 1506, 2010-Ohio-799, 922 N.E.2d 969. The insurers’ second proposition of law states that the doctrine of inferred intent as applied to an intentional-act exclusion in an insurance policy is not limited to cases of sexual molestation or homicide but may be applied where undisputed facts establish that harm was substantially certain to occur as a result of the insured’s conduct. Allstate and Grange’s third proposition of law states that their policies’ exclusionary language denotes an objective as opposed to a subjective standard of coverage, rendering an insured’s subjective intent irrelevant.
II. Legal Analysis

A. The Language of the Insurance Agreements

{¶ 8} “It is axiomatic that an insurance company is under no obligation to its insured, or to others harmed by the actions of an insured, unless the conduct alleged of the insured falls within the coverage of the policy.” Gearing v. Nationwide Ins. Co. (1996), 76 Ohio St.3d 34, 36, 665 N.E.2d 1115. “Coverage is provided if the conduct falls within the scope of coverage defined in the policy, and not within an exception thereto.” Id.
{¶ 9} Homeowners’ insurance policies typically provide coverage for harm accidentally caused by their insureds; intentional torts are excluded. Most policies contain an intentional-act exclusion, which states that the insurance company will not be liable for harm intentionally caused by the insured. But when there is no evidence of direct intent to cause harm and the insured denies the intent to cause any harm, the insured’s intent to cause harm will be inferred as a matter of law in certain instances. Gearing, 76 Ohio St.3d 34, 665 N.E.2d 1115, paragraph one of the syllabus.
{¶ 10} Although the central question is whether intent to harm should be inferred as a matter of law under the circumstances of this case, insurance coverage is finally determined by the policy language. As a preliminary matter, we recognize that each policy issued by the four insurers contains similar language defining an “occurrence” as an accident and providing coverage for bodily injury arising from an occurrence. Each insurer, however, uses unique exclusionary language.
*190 1. Allstate’s exclusionary language for intentional act
{¶ 11} Allstate issued policies to a parent of Dailyn Campbell and the parents of Jesse Howard.[3] The exclusion portion of the Allstate policies provides:
{¶ 12} “Losses We Do Not Cover * * *:
{¶ 13} “1. We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person. This exclusion applies even if:
{¶ 14} “a) such insured person lacks the mental capacity to govern his or her conduct;
{¶ 15} “b) such bodily injury or property damage is of a different kind or degree than intended or reasonably expected; or
{¶ 16} “c) such bodily injury or property damage is sustained by a different person than intended or reasonably expected.” (Boldface sic.)
2. American Southern’s exclusionary language for intentional act
{¶ 17} American Southern also issued a policy to one of Dailyn Campbell’s parents. The exclusion portion of the American Southern policy provides:
{¶ 18} “1. Exclusions That Apply to Coverages L and M — Liability and Medical Payment Coverage does not apply to ‘bodily injury’ or ‘property damage’ which results directly or indirectly from:
{¶ 19} “ * * *
{¶ 20} “j. an intentional act of any ‘insured’ or an act done at the direction of any ‘insured.’ ” (Boldface sic.)
3. Erie’s exclusionary language for intentional act
{¶ 21} Erie issued policies to a parent of Corey Manns and the parents of Carson Barnes.[4] The exclusion portion of the Erie policies provides:
{¶ 22} “WHAT WE DO NOT COVER — EXCLUSIONS
{¶ 23} “ * * *
{¶ 24} “We do not cover under Bodily Injury Liability Coverage * * *:
{¶ 25} “1. Bodily injury, property damage or personal injury expected or intended by anyone we protect even if:
{¶ 26} “a. the degree, kind or quality of the injury or damage is different than what was expected or intended; or
*191 {¶ 27} “b. a different person, entity, real or personal property sustained the injury or damage than was expected or intended.” (Boldface and emphasis sic.)
4. Grange’s exclusionary language for intentional act
{¶ 28} Grange issued a policy to a parent of Corey Manns. The Grange policy provides:
{¶ 29} “EXCLUSIONS
{¶ 30} “ * * *
{¶ 31} “6. Bodily injury or property damage expected or intended by any insured person.” (Boldface sic.)

B. Acceptance of the Doctrine of Inferred Intent

{¶ 32} The appellant insurers argue that we should expand the rule of inferred intent so that it applies to the circumstances in this case. They suggest that we apply the “substantially certain” test so that intent to harm will be inferred as a matter of law whenever an insured’s act is substantially certain to cause harm. The appellees argue that application of inferred intent should remain limited and that instead of using the “substantially certain” test in this case, the trial court should resolve the disputed matter of the boys’ intent like any other issue of fact.
{¶ 33} Before we discuss whether the rule of inferred intent should be extended to all torts where there is a substantial certainty of harm or limit its application, we must explore the line of cases that have accepted the doctrine.
{¶ 34} We have already recognized that the rule of inferred intent applies in two specific instances: sexual molestation of a minor and murder. See Gearing, 76 Ohio St.3d at 36-38, 665 N.E.2d 1115; Preferred Risk Ins. Co. v. Gill (1987), 30 Ohio St.3d 108, 114-115, 30 OBR 424, 507 N.E.2d 1118. Appellants ask us to extend the doctrine to apply in cases like the one currently before us, specifically relying upon the analysis set forth in Justice Cook’s concurring opinion in Buckeye Union Ins. Co. v. New England Ins. Co. (1999), 87 Ohio St.3d 280, 288-289, 720 N.E.2d 495. In her concurrence, Justice Cook argued that where direct intent does not exist, the insured’s subjective intent is not conclusive on the coverage issue, and courts should instead infer an intent to harm where the insured’s action creates a substantial certainty of harm. Id.
{¶ 35} We acknowledge that the lack of a majority opinion in Buckeye Union has generated uncertainty as to the scope of the doctrine of inferred intent. On one hand, the appellees argue that Justice Pfeifer’s plurality opinion in Buckeye Union — which limits the doctrine to acts that are “intentionally injurious by definition,” id. at 284, represents the correct view of the doctrine in Ohio. On the other hand, the appellants argue that inferred intent should be applied in a wider variety of cases, as the Buckeye Union concurring opinion suggests. Recogniz *192 ing the need for clarity in this area of the law, we first review our decisions relevant to the doctrine.
1. Preferred Risk Ins. Co. v. Gill
{¶ 36} The roots of the doctrine of inferred intent in Ohio can be traced back to Gill, 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118. In Gill, we considered whether an insurance company had a duty to defend or indemnify against claims of wrongful death and negligent infliction of emotional distress an insured who had been convicted of aggravated murder of a child. The insurance policy included language excluding coverage for “bodily injury or property damage ‘which is expected or intended by the insured.’ ” Id. at 113. We held that the insurance company had no duty to defend or indemnify in the underlying wrongful-death claim because the insured’s act “was indisputably intentional and outside coverage.” Id. at 115. We also concluded that the insurance company had no duty to defend or indemnify in the underlying claim for emotional distress, noting that the behavior of the insured leading to the emotional distress “had its origin in a clearly intentional course of conduct (i.e., the murder) and is so inextricably entwined in time and purpose with the intentional acts leading to the murder, and the murder itself, that it cannot fairly be said to be within coverage.” Id.
2. Physicians Ins. Co. of Ohio v. Swanson
{¶ 37} We revisited Gill in Physicians Ins. Co. of Ohio v. Swanson (1991), 58 Ohio St.3d 189, 569 N.E.2d 906. Swanson considered whether the insurance companies had an obligation to defend and indemnify its insureds, whose son had fired a BB gun towards some teenagers from approximately 70 to 100 feet. The Swansons’ insurance policy said that it “will not cover Personal Injury or Property Damage caused intentionally.” Id. at 191. In explaining our decision in Gill, we noted, “Gill actually stands for the proposition that it is the resultant injury which must be intended for the exclusion to apply to deny coverage.” (Emphasis sic.) Id.
{¶ 38} In reversing the holding of the court of appeals that the insurers were not obligated to defend and indemnify its insureds, we held, “In order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended.” Id. at syllabus. This holding was based upon two rationales. First, we determined that the plain language of the policy was in terms of an intentional or expected injury, not an intentional or expected act. Id. at 193. Second, we recognized that many unintended injuries result from intentional acts. Id.
*193 3. Gearing v. Nationwide Ins. Co.
{¶ 39} While Gill and Swanson can be read as implicitly adopting a form of inferred intent, we first explicitly recognized the doctrine in Gearing, 76 Ohio St.3d 34, 665 N.E.2d 1115, paragraph one of the syllabus. Gearing involved a declaratory judgment action in which an insured sought a declaration that the insurance company was obligated to defend him in a civil suit arising from his alleged sexual molestation of three girls. Id. at 34-35. We affirmed the judgment of the court of appeals, holding that the insurance company owed no duty to defend the insured. Id. at 41.
{¶ 40} In Gearing, the insurance policy had provided an exclusion for bodily injury or property damage that is “expected or intended by the insured.” Id. at 36. We examined cases from other states in which the doctrine of inferred intent was applied to cases arising from acts of sexual molestation, concluding that “in those cases where an intentional act is substantially certain to cause injury, determination of an insured’s subjective intent, or lack of subjective intent, is not conclusive of the issue of coverage.” Id. at 39. Thus, “an insured’s protestations that he ‘didn’t mean to hurt anyone’ are only relevant where the intentional act at issue is not substantially certain to result in injury.” Id.
{¶ 41} We noted that this conclusion is central to Swanson, where we stated, “ ‘ “[Resulting injury which ensues from the volitional act of an insured is still an ‘accident’ within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm or is not substantially certain that such harm will occur.” ’ ” (Emphasis added in Gearing.) Id. at 39-40, quoting Swanson, 58 Ohio St.3d at 193, 569 N.E.2d 906, quoting Quincy Mut. Fire Ins. Co. v. Abernathy (1984), 393 Mass. 81, 84, 469 N.E.2d 797.
{¶ 42} After determining that the arguments in support of inferred intent were persuasive and that the rule was consistent with earlier decisions, we adopted it: “We accept the premises upon which the inferred intent rule is based, and hold that intent to harm is properly inferred as a matter of law from deliberate acts of sexual molestation of a minor.” Gearing, 76 Ohio St.3d at 37, 665 N.E.2d 1115. In applying this holding, we concluded, “Incidents of intentional acts of sexual molestation of a minor do not constitute ‘occurrences’ for purposes of determining liability insurance coverage, as intent to harm inconsistent with an insurable incident is properly inferred as a matter of law from deliberate acts of sexual molestation of a minor.” Id. at paragraph one of the syllabus.
{¶ 43} Our decision in Gearing nevertheless left certain issues unresolved. In adopting the doctrine of inferred intent only in the context of sexual-molestation cases, we did not address the question of whether intent may be inferred in cases involving acts other than sexual molestation or murder. Furthermore, as a result of this limited adoption of the rule, we did not enunciate a clear standard for *194 courts to apply in determining whether a certain act gives rise to an inference of intent.
4. Buckeye Union Ins. Co. v. New England Ins. Co.
{¶ 44} The application of the doctrine of inferred intent to cases beyond those involving murder and sexual molestation first arose in Buckeye Union Ins. Co., 87 Ohio St.3d at 288-289, 720 N.E.2d 495 (Cook, J. concurring). A federal district court had ruled in an underlying case that Buckeye Union Insurance Company had acted in bad faith and with intent to injure in refusing to settle an insurance claim and that this intentional act precluded New England Insurance Company from reimbursing its insured, Buckeye Union, under a professional liability policy. Id. at 281-282. The Sixth Circuit Court of Appeals certified three questions to this court, the first of which asked whether Buckeye Union’s actions in the underlying case constituted the type of intentional tort that is uninsurable under Ohio law. Id. at 282. We answered that question “no.” Id.
{¶ 45} In a plurality opinion, Justice Pfeifer made a distinction. He noted that in both Gill and Gearing, “insureds were found to have committed wrongful acts, acts that are intentionally injurious by definition.” Id. at 284. Buckeye Union’s act of refusing to settle an insurance claim was not such an intentionally injurious act, Justice Pfeifer explained, because in certain circumstances, insurers may properly refuse to settle claims. Id. He accordingly concluded that it would be improper to extend the doctrine of inferred intent to torts that were based upon a bad-faith refusal to settle an insurance claim.
{¶ 46} Disagreeing with Justice Pfeifer’s reasoning, Justice Cook argued that Gearing, 76 Ohio St.3d 34, 665 N.E.2d 1115, provided an effective means for analyzing coverage issues regarding a wide variety of intentional torts. Id. at 289-290 (Cook, J., concurring). Justice Cook criticized limiting “acts that are intentionally injurious by definition” to murder and sexual molestation, arguing that this categorization does not clarify what other types of actions might reveal intent. Id. at 289-290. She concluded that the proper test would be the objective “substantial certainty” test set forth in Gearing. Id. at 290-291. A close examination of Gearing, however, reveals that this court has limited the scope of inferred intent.

C. Application of the Doctrine of Inferred Intent

{¶ 47} In Gearing, we noted that the rule of inferred intent “is based on the premise that acts of sexual molestation and the fact of injury caused thereby are ‘virtually inseparable.’ ” Gearing, 76 Ohio St.3d at 37, 665 N.E.2d 1115, quoting Worcester Ins. Co. v. Fells Acres Day School, Inc. (1990), 408 Mass. 393, 400, 558 N.E.2d 958. In other words, in a ease of sexual molestation, “ ‘to do the act is necessarily to do the harm which is its consequence; and * * * since unquestion *195 ably the act is intended, so also is the harm.’ ” (Ellipsis sic.) Id., quoting Allstate Ins. Co. v. Mugavero (1992), 79 N.Y.2d 153, 160, 581 N.Y.S.2d 142, 589 N.E.2d 365.
{¶ 48} It is clear that as applied to an insurance policy’s intentional-act exclusion, the doctrine of inferred intent applies only in cases in which the insured’s intentional act and the harm caused are intrinsically tied so that the act has necessarily resulted in the harm. Limiting the scope of the doctrine is appropriate because the rule is needed only in a narrow range of cases — those in which the insured’s testimony on harmful intent is irrelevant because the intentional act could not have been done without causing harm. Thus, an insured’s intent to cause injury or damage may be inferred only when that harm is intrinsically tied to the act of the insured — i.e., the action necessitates the harm. The doctrine of inferred intent does not apply only to cases arising from acts of murder or sexual molestation. For example, intent could hypothetically be inferred in certain felonious-assault or rape cases, where the intentional acts necessarily cause harm; however, courts should be careful to avoid applying the doctrine in cases where the insured’s intentional act will not necessarily result in the harm caused by that act.
{¶ 49} Gill and Gearing provide clear examples of cases in which the doctrine applies. In Gill, harm was inherent in the defendant’s act of murder. Harm was similarly inherent in the acts of sexual molestation in Gearing. In each of these cases, the insured could not claim that he was unaware that harm would result from his actions. The doctrine of inferred intent thus applied in those cases, and the insureds’ actions were excluded from coverage.
{¶ 50} The same cannot be said about the actions in Swanson and Buckeye Union. In Swanson, the act of firing a BB gun from a relatively long distance would not necessarily result in harm. Likewise, an insurance company’s bad-faith refusal to settle a claim, as in Buckeye Union, does not necessarily result in compensable damages. In both cases, a factual inquiry was necessary to determine whether the insureds’ actions were excluded from coverage.
{¶ 51} The present case is similar to Swanson and Buckeye Union. We cannot say as a matter of law that the act of placing a target deer in a road in the manner done here necessarily results in harm. Indeed, other cars had passed by and avoided the target. While the boys’ act was ill-conceived and irresponsible and resulted in serious injuries, the action and the harm are not intrinsically tied the way they are in murder and sexual molestation. We accordingly conclude that while the doctrine of inferred intent may apply to actions other than murder or sexual molestation, it does not apply in this case.

D. The “Substantially Certain” Test

{¶ 52} Appellants have asked us to use the “substantially certain” test — which Justice Cook advocated in Buckeye Union and which was discussed in Swanson *196 and Gearing — when deciding whether the intentional-act exclusion applies to cases other than murder or sexual assault. Before adopting the rule of inferred intent for Ohio, we had quoted from the Supreme Judicial Court of Massachusetts, which characterizes an act that is not expected or intended by the insured: “ ‘the resulting injury which ensues from the volitional act of an insured is still an “accident” within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm or is not substantially certain that such harm will occur.’ ” Swanson, 58 Ohio St.3d at 193, 569 N.E.2d 906, quoting Quincy, 393 Mass, at 84, 469 N.E.2d 797. In Swanson, we held that the insurer must demonstrate that “the injury itself was expected or intended.” Id. at 193.
{¶ 53} We also quoted Swanson’s “substantially certain” language when explaining how adoption of the doctrine of inferred intent was consistent with precedent. Gearing, 76 Ohio St.3d at 39-40, 665 N.E.2d 1115. “[I]n those cases where an intentional act is substantially certain to cause injury, determination of an insured’s subjective intent, or lack of subjective intent, is not conclusive of the issue of coverage. Rather, an insured’s protestations that he ‘didn’t mean to hurt anyone’ are only relevant where the intentional act at issue is not substantially certain to result in injury.” Id. at 39. Significantly, nowhere does Gearing state that the “substantially certain” test should be used to determine whether to infer intent as a matter of law in considering other intentional torts.
{¶ 54} Justice Cook argued that Gearing outlined a two-part analysis. Buckeye Union, 87 Ohio St.3d at 289, 720 N.E.2d 495 (Cook, J., concurring). First is a determination whether the insured directly intended the injury. Id. at 288. If no direct intention exists, then the court determines whether the insured’s act was substantially certain to cause injury. Id. That approach is flawed, however.
{¶ 55} Instead of outlining a two-part analysis, Gearing treats the “substantially certain” test as being subsumed within the newly adopted rule of inferred intent.[5] Gearing never addressed whether the insured’s action was substantially certain to result in harm. Instead, it concluded that “intent to kai"m inconsistent with an insurable incident is properly inferred as a matter of law from deliberate acts of sexual molestation of a minor.” (Emphasis added.) Gearing, 76 Ohio St.3d at 40, 665 N.E.2d 1115.
{¶ 56} We now clarify that the doctrine of inferred intent applies only in cases in which the insured’s intentional act and the harm caused are intrinsically tied so *197 that the act has necessarily resulted in the harm. Because this test provides a clearer method for determining when intent to harm should be inferred as a matter of law, we hold that courts are to examine whether the act has necessarily resulted in the harm — rather than whether the act is substantially certain to result in harm.

E. Objective or Subjective Nature of Inferred Intent

{¶ 57} In their second propositions of law, Allstate and Grange argue that the exclusionary language used in their policies requires an objective test for whether they must provide coverage. Because we determine that under the circumstances of this case, intent to harm may not be inferred as a matter of law, we affirm the judgment of the court of appeals on this point and conclude that the trial court must conduct a factual inquiry on remand to determine whether a duty to defend and indemnify arises from the Allstate, Grange, and Erie policies.
{¶ 58} The Allstate, Grange, and Erie polices each contain exclusionary language stating that the insurers will not cover harm expected or intended by an insured.[6] Because we do not infer the insureds’ intent to harm as a matter of law and the boys deny that harm was intended or expected, whether the injury was expected or reasonably expected is an issue to be determined by the trier of fact. See Swanson, 58 Ohio St.3d at 193-194, 569 N.E.2d 906.
{¶ 59} An insurer’s motion for summary judgment may be properly granted when intent may be inferred as a matter of law. In cases such as this one, where the insured’s act does not necessarily result in harm, we cannot infer an intent to cause injury as a matter of law. We therefore hold that summary judgment is not proper. In a declaratory action like this, the trier of fact on remand must weigh the facts in evidence to determine whether the boys intended or expected harm and, consequently, whether the insurance agreements provide coverage in this case.

F. American Southern Policy’s Exclusionary Language

{¶ 60} The policy issued by American Southern contains exclusionary language that differs from that found in the Allstate, Erie, and Grange policies, as well as the policies at issue in Gill, Swanson, and Gearing. American Southern’s policy states that coverage does not apply to “ ‘bodily injury’ or ‘property damage’ which results directly or indirectly from * * * an intentional act of any ‘insured.’ ” The *198 American Southern policy is written in an extremely broad manner that declares that American Southern is not liable for harm resulting from any intentional act done by an insured. This language stands in stark contrast to the language of the other insurance policies at issue in this case, which exclude from coverage harm that is expected or intended by the insured.
{¶ 61} By using broad exclusionary language excluding coverage for harm caused by any intentional act — regardless of whether the harm is expected or intended by the insured — American Southern has worded its policy in a manner that frees it from the line of analysis found in Gill, Swanson, and Gearing. In those three cases, each insurance policy excluded coverage for harm that was “caused intentionally” or “expected or intended” by the insured. Gill, 30 Ohio St.3d at 113, 30 OBR 424, 507 N.E.2d 1118; Swanson, 58 Ohio St.3d at 191, 569 N.E.2d 906; Gearing, 76 Ohio St.3d at 36, 665 N.E.2d 1115. While those cases contained exclusions for an intentional or expected injury, American Southern’s policy addresses an intentional act. Given the significantly different and unambiguous language of the American Southern policy, we must conclude that as a matter of law, American Southern is under no duty to defend or indemnify Dailyn Campbell or his family for any liability resulting from his intentional acts in participating in the events at issue in this case.
III. Conclusion
{¶ 62} We hold that as applied to an insurance policy’s intentional-act exclusion, the doctrine of inferred intent is not limited to cases of sexual molestation or homicide. Nevertheless, the doctrine of inferred intent applies only in cases in which the insured’s intentional act and the harm caused by that act are intrinsically tied so that the harm necessarily results from the act. Because the doctrine of inferred intent does not apply to the circumstances of this case, we further hold that under the Allstate, Erie, and Grange policies, the trier of fact must conduct a factual inquiry on remand to determine whether the boys intended or expected the harm that resulted from their intentional actions. We thus affirm the court of appeals’ judgment that the trial court erred in granting the motions for summary judgment of Allstate, Erie, and Grange.
{¶ 63} We reverse the judgment of the court of appeals as it applies to American Southern and reinstate the finding of the trial court that there is no coverage under the American Southern policy and that American Southern is accordingly under no duty to defend or indemnify Dailyn Campbell and his parent.
Judgment affirmed in part and reversed in part, and cause remanded.
O’Connor, J., concurs.
*199 Brown, C.J., and Pfeifer, J., concur in the syllabus and in part of the judgment.
Lundberg Stratton, O’Donnell, and Cupp, JJ., concur in paragraph one of the syllabus and in part of the judgment.

. Zachariah’s mother, Katherine E. Piper, is also a plaintiff in Zaehariah’s suit.

. We note that while our March 10, 2010 Case Announcements correctly reflected the propositions of law over which we granted jurisdiction, our March 10, 2010 entry in this ease contained a clerical *189 error, indicating that we accepted the appeal of American Southern on Proposition of Law I. American Southern has briefed both Proposition of Law I, for which we did not accept jurisdiction, and Proposition of Law II, for which we did. We correct the clerical error by accepting the appeal of American Southern nunc pro tunc only on Proposition of Law II, and we will not address American Southern’s Proposition of Law I.

. The relevant language of each policy issued by Allstate is identical.

. The relevant language of each policy issued by Erie is identical.

. Appellants argue that we adopted Justice Cook’s Buckeye Union opinion in Penn Traffic Co. v. AIU Ins. Co., 99 Ohio St.3d 227, 2003-Ohio-3373, 790 N.E.2d 1199. Penn Traffic, however, is inapposite here, as it concerned employer liability for intentional torts, an entirely separate area of the law that has undergone significant change since that opinion was issued. See Kaminski v. Metal & Wire Prods. Co., 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066.

. Allstate argues that its policy’s language precluding damage that “may reasonably be expected to result from the intentional * * * acts” of “any insured person” differentiates its policy from the others in a manner that triggers an objective test. (Emphasis sic.) We conclude that as interpreted in light of Swanson and Gearing, Allstate’s inclusion of the word “reasonably” into its exclusionary language does not alter our analysis here, because the issue of whether the harm was intended or could reasonably be expected to result from the an intentional act is a question of fact.