[Cite as *Sanders v. Nationwide Mut. Ins. Co.*, 2011-Ohio-1933.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 95228

---

## SANDRA A. SANDERS

PLAINTIFF-APPELLANT

vs.

## NATIONWIDE MUTUAL INS. CO.

DEFENDANT-APPELLEE

---

**JUDGMENT:**
**AFFIRMED IN PART, REVERSED IN PART, AND
REMANDED**

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-693116

**BEFORE:** Sweeney, J., Boyle, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:**     April 21, 2011

**ATTORNEYS FOR APPELLANT**

Timothy A. Shimko, Esq.
Timothy A. Shimko & Associates
2010 Huntington Building
925 Euclid Avenue
Cleveland, Ohio 44115

Robert L. Tucker, Esq.
Hanna, Campbell & Powell, L.L.P.
3737 Embassy Parkway
P.O. Box 5521
Akron, Ohio 44334

**ATTORNEY FOR APPELLEE**

Gregory E. O'Brien, Esq.
Cavitch, Familo & Durkin Co., L.P.A.
Twentieth Floor
1300 East Ninth Street
Cleveland, Ohio 44114

JAMES J. SWEENEY, J.:

{¶ 1}   Plaintiff-appellant Sandra A. Sanders ("plaintiff") appeals the trial court's denial of her motion for partial summary judgment and the court's granting defendant-appellee Nationwide Mutual Insurance Company's ("Nationwide") summary judgment motion.   After reviewing the facts of the case and pertinent law, we affirm in part and reverse and remand in part.

{¶ 2} On October 29, 2006, plaintiff's home was destroyed by a fire. Plaintiff submitted a claim to Nationwide, who insured the home at the time. Nationwide made various payments on the claim and began an investigation into the fire. The investigation concluded that plaintiff's 17-year-old son, W.S., intentionally set the fire in plaintiff's house. On July 24, 2007, Nationwide notified plaintiff that it was denying coverage of the claim, stating its reason for the denial as follows:

{¶ 3} "[W]e have concluded that the fire was caused intentionally by or at the direction of an insured and that the damage could reasonably have been expected to result from an insured's acts, or was the intended result from such acts, including criminal acts.

{¶ 4} "Your Nationwide homeowner's policy form HO-34A states on page D1 as follows:

{¶ 5} "Property Exclusions

{¶ 6} "(Section I)

{¶ 7} "1. We do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss.

{¶ 8} "* * *

{¶ 9} "g) Intentional Acts, meaning loss resulting from an act committed by or at the direction of an insured that may reasonably be expected to result from such acts, or is the

intended result from such acts. Intentional acts include criminal acts. Such acts exclude coverage for all insureds."

{¶ 10} On May 19, 2009, plaintiff filed a complaint against Nationwide, alleging breach of contract and "bad faith tort." On May 19, 2010, the trial court denied plaintiff's motion for partial summary judgment and granted Nationwide's motion for summary judgment.

{¶ 11} Plaintiff appeals and raises six assignments of error for our review.

{¶ 12} Appellate review of summary judgment is de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. The Ohio Supreme Court stated the appropriate test in *Zivich v. Mentor Soccer Club* (1998), 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201, as follows:

{¶ 13} "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274."

{¶ 14} Plaintiff's first assignment of error states as follows:

{¶ 15} "I.   The trial court erred in denying plaintiff Sandra A. Sanders' motion for partial summary judgment because, under *Safeco Ins. Co. v. White* (2009), 122 Ohio St.3d 562, she was an 'innocent co-insured' entitled to coverage under the Nationwide policy."

{¶ 16} "'[A]n insurance company is under no obligation to its insured' to cover a loss unless it 'falls within the coverage of the policy * * * and not within an exception thereto.' Homeowners' insurance policies typically provide coverage for harm accidentally caused by their insureds; intentional torts are excluded. Most policies contain an intentional-act exclusion, which states that the insurance company will not be liable for harm intentionally caused by the insured."   (Internal citations omitted).   *Allstate Ins. Co. v. Campbell*, 128 Ohio St.3d 186, 2010-Ohio-6312, 942 N.E.2d 1090,  ¶1, 2.

{¶ 17} In *Safeco v. White*, 17-year-old Benjamin White pled guilty to attempted murder and felonious assault after stabbing Casey Hilmer.   Hilmer sued Benjamin for battery and his parents, the Whites, for negligent supervision and entrustment.   A jury found in favor of Hilmer against Benjamin and the Whites.   The Whites had homeowner's insurance, as well as a separate umbrella liability policy, with Safeco.   Benjamin was an insured under both policies.   An exclusion from coverage for intentional and illegal acts clearly applied to Benjamin's stabbing Hilmer.   However, Safeco also denied coverage for the negligence based claims against the Whites, arguing that it had "no obligation to defend or indemnify the

Whites in relation to claims arising out of their son's intentional act." *Safeco Ins. Co. of Am. v. White*, 122 Ohio St.3d 562, 2009-Ohio-3718, 913 N.E.2d 426, ¶9.

{¶ 18} The Ohio Supreme Court found that the following question ultimately controlled the case: "Do policy exclusions that preclude coverage for the intentional and/or illegal acts of an insured also preclude coverage for related negligent acts of other insureds?" Id. at ¶29. The Court answered the question in the negative, focusing on whether the negligent acts proximately caused injuries separate and distinct from the intentional acts. Id. at ¶36-38.

{¶ 19} The instant case is easily distinguished from *Safeco*, however, because the coverage being sought here does not stem from the negligent actions of an insured, arising from the intentional act of another insured, for the benefit of a third party. Rather, plaintiff is seeking coverage for damages caused by the intentional actions of one insured for the benefit of herself, another insured. There is no allegation of negligence, and nothing in the record shows damage caused by anything other than W.S. setting the house on fire. See, also, *Bocook v. Sand & Beaver Valley Farmers Mut. Ins. Co.*, Highland App. No. 02CA4, 2002-Ohio-6307, ¶12 (precluding insurance coverage for damages caused by the plaintiff's children setting the house on fire because the policy clearly and unambiguously excluded "coverage for losses caused by the intentional acts of an insured").

{¶ 20} Accordingly, the Ohio Supreme Court's holding in *Safeco* is inapplicable to the case at hand. The trial court did not err in denying plaintiff's partial summary judgment motion, and her first assignment of error is overruled.

{¶ 21} In plaintiff's second assignment of error, she argues as follows:

{¶ 22} "II. The trial court erred in granting Nationwide's motion for summary judgment — and erred in denying Plaintiff Sandra A. Sanders' cross-motion for partial summary judgment — because W.S. Sanders' adjudication of juvenile delinquency was inadmissible and could not properly be considered to establish intent for summary judgment purposes."

{¶ 23} Generally, criminal convictions are admissible to prove that an insured acted intentionally. See Evid.R. 803(22). In the instant case, however, W.S. was not an adult "convicted" in the criminal justice system. W.S. admitted in juvenile court to attempted aggravated arson in violation of R.C. 2909.02(A)(2), which states that "[n]o person, by means of fire * * * shall knowingly * * * [c]ause physical harm to any occupied structure * * *," and R.C. 2923.02, which defines attempt as "purposely or knowingly * * * engag[ing] in conduct that, if successful, would constitute or result in the offense."

{¶ 24} Plaintiff argues that W.S.'s adjudication of juvenile delinquency was inadmissible to show his intent pursuant to Juv.R. 37(B), which states as follows: "No public use shall be made by any person, including a party, of any juvenile court record, including the

recording or a transcript of any juvenile court hearing, except in the course of an appeal or as authorized by order of the court or by statute." The Ohio Supreme Court has held that the "purpose of Juv.R. 37(B) is to keep confidential juvenile court records involving children, since their welfare is at stake." *State ex rel. Scripps Howard Broadcasting Co. v. Cuyahoga Cty. Court of Common Pleas, Juv. Div.* (1995), 73 Ohio St.3d 19, 22, 652 N.E.2d 179. Juv.R. 37(B) is to be balanced or "construed consistently with the constitutional right of public access * * *." Id.

{¶ 25} Nationwide sought to admit W.S.'s juvenile court adjudication as evidence that W.S. intended to set plaintiff's house on fire, which is directly related to the ultimate issue of insurance coverage. Nationwide argues that the "admissibility of evidence of a juvenile adjudication is controlled by R.C. 2151.357(H)." However, R.C. 2151.357 does not apply to the instant case; rather, it governs the effect of sealing juvenile records, and there is no evidence that W.S.'s delinquency record was sealed pursuant to R.C. 2151.356. See *State v. Collins*, Cuyahoga App. No. 89529, 2008-Ohio-578 (holding that "where the child has been adjudicated, the records are sealed only upon motion and hearing").

{¶ 26} Nonetheless, R.C. 2151.357(H) stands for the proposition that if a juvenile record is sealed, it is inadmissible to impeach the juvenile in court. Otherwise, sealed juvenile records are "admissible as evidence for or against the child in any action or

proceeding in any court * * *." R.C. 2151.357(H). Compare with Evid.R. 609(A), which states that evidence of certain adult convictions is generally admissible to impeach a witness.

{¶ 27} With this guidance in mind, we find that W.S.'s juvenile adjudication of attempted arson was admissible to show his intent. See *Black v. Richards*, Perry App. Nos. 08 CA 19, 09 CA 4, 09 CA 12, and 09 CA 13, 2010-Ohio-2938 (holding that the insured's adjudication of delinquency after admitting to "complicity to engage in arson * * * is sufficient to trigger the intentional acts exclusion" under the insurance policy); *Horace Mann Cos. v. Harris* (Aug. 11, 1997), Madison App. No. CA96-11-051 (holding that "[a]n insurer may avoid providing coverage or a defense for a juvenile insured where the insurer establishes that the juvenile insured has been adjudicated delinquent"); *Michigan Millers Ins. Co. v. Anspach* (1996), 109 Ohio App.3d 618, 621, 672 N.E.2d 1042 (analyzing whether an insurance company "had a duty to defend and indemnify" an insured who "was tried in juvenile court and found delinquent by reason of having committed the offense of involuntary manslaughter").

{¶ 28} Plaintiff's second assignment of error is overruled.

{¶ 29} Plaintiff's third, fourth, and fifth assignments of error will be addressed together, and they state as follows:

{¶ 30} "III. The trial court erred in granting Nationwide's motion for summary judgment because, even if admissible, [W.S.'s] adjudication of juvenile delinquency was at

most some evidence of his intent, which could be and was opposed by countervailing evidence, thereby creating a genuine issue of material fact."

{¶ 31} "IV. The trial court erred in granting Nationwide's motion for summary judgment because W.S. Sanders' adjudication of juvenile delinquency was not binding on Sandra A. Sanders, who was not a party to that juvenile proceeding."

{¶ 32} "V. The trial court erred in granting Nationwide's motion for summary judgment because W.S. Sanders' adjudication of juvenile delinquency did not trigger the 'criminal act' portion of the Nationwide exclusion."

{¶ 33} In *Physicians Ins. Co. of Ohio v. Swanson* (1991), 58 Ohio St.3d 189, 193, 569 N.E.2d 906, the Ohio Supreme Court held that "to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended. It is not sufficient to show merely that the act was intentional."

{¶ 34} However, the Ohio Supreme Court has held that an intentional act exclusion to insurance coverage will not apply "where the insured was mentally incapable of committing an intentional act." *Nationwide Ins. Co. v. Estate of Kollstedt* (1995), 71 Ohio St.3d 624, 627, 646 N.E.2d 816.

{¶ 35} The *Kollstedt* Court adopted this court's definition of insanity "within the context of an intentional-injury-exclusion clause in an insurance contract: * * * an act of an individual cannot be treated as 'intentional' if the insured was suffering from a derangement of

his intellect which deprived him of the capacity to govern his conduct in accordance with reason." *Kollstedt*, at 626-627 (quoting *Nationwide Mut. Fire Ins. Co. v. Turner* (1986), 29 Ohio App.3d 73, 76, 503 N.E.2d 212).

{¶ 36} *Turner* was based on a wrongful death action stemming from a murder-suicide, in which the insurance company sought an exclusion from coverage under an intentional acts theory. This court held that the trial court erred in granting summary judgment for the insurance company because "[w]hether the insured was in fact insane is a question of fact for the trier of fact * * *." *Turner*, 29 Ohio App.3d at 77. Cf. *Kollstedt*, 71 Ohio St.3d at 627 (holding that in a declaratory judgment action, the court acts as the finder of fact, and "[w]hen disputed, the determination whether an insured lacked the mental capacity to commit an intentional act is a matter to be determined, in the first instance, by a trial court, and such determination is to be made by the trial court on the basis of the evidence").

{¶ 37} In general, collateral estoppel may preclude relitigation of an issue that was determined in a prior judgment, if the party asserting collateral estoppel shows the following:

{¶ 38} "(1) The party against whom estoppel is sought was a party or in privity with a party to the prior action;

{¶ 39} "(2) There was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue;

**{¶ 40}** "(3) The issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and

**{¶ 41}** "(4) The issue must have been identical to the issue involved in the prior suit."

**{¶ 42}** *Miller v. Coldwell Banker Hunter Realty*, Cuyahoga App. Nos. 93529 and 93662, 2010-Ohio-5840, ¶23-27, (quoting *Monahan v. Eagle Picher Industries, Inc.* (1984), 21 Ohio App.3d 179, 180, 486 N.E.2d 1165. The Ohio Supreme Court has held that, to have a preclusive effect, "[i]t is readily apparent that a prior judgment * * * must involve the same issues, and the same parties as the later proceeding." *Quality Ready Mix, Inc. v. Mamone* (1988), 35 Ohio St.3d 224, 227, 520 N.E.2d 193.

**{¶ 43}** This court has used collateral estoppel to find that a "criminal conviction is conclusive proof and operates as an estoppel on defendants as to the facts supporting the conviction in a subsequent civil action." *Wloszek v. Weston, Hurd, Fallon, Paisley & Howley*, Cuyahoga App. No. 82412, 2004-Ohio-146, ¶40.

**{¶ 44}** In the instant case, Nationwide is seeking estoppel against W.S., who is not a party to this case. Furthermore, the Ohio Supreme Court rejected the definition of insanity used in criminal proceedings in favor of this court's definition of insanity from *Turner*, supra, in "the context of an intentional-injury-exclusion clause in an insurance contract * * *." *State v. Kollstedt*, 71 Ohio St.3d at 626-627. In other words, the standard used to determine whether a criminal defendant was capable of forming the requisite intent to commit a crime is

different than the standard used to determine whether an insured lacked the mental capacity to commit an intentional act. Therefore, we find that the issue of W.S.'s intent, in the context of an insured's actions, has never been litigated, and the doctrine of collateral estoppel is not applicable to the instant case.

{¶ 45} Notwithstanding collateral estoppel, Nationwide argues that criminal convictions containing an "intent" element establish "beyond dispute * * * the applicability of an insurance policy's 'intentional act' exclusion" pursuant to *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 507 N.E.2d 1118. However, we find this to be too broad a reading of *Gill*.

{¶ 46} In *Gill*, the Ohio Supreme Court overruled its prior decision in *Transamerica Ins. Co. v. Taylor* (1986), 28 Ohio St.3d 312, 504 N.E.2d 15, and held that certain insurance disputes are properly decided in a declaratory judgment action. *Gill*, 30 Ohio St.3d at 112. The *Gill* Court then concluded that the insurance company had no duty to defend its insured in a wrongful death claim after the insured was convicted of aggravated murder. *Gill*, however, was decided on the facts of that particular case, "where the conduct which prompted the underlying wrongful death suit is so indisputably outside coverage * * *." Id. at 113. The Court declined to definitively address the issue, stating "[w]e express no opinion on the merits of [*Transamerica*], including whether the insured's conviction of involuntary manslaughter, without more, constitutes proof of an intentional act." Id. at fn. 5. See, also, *Cincinnati Ins.*

*Co. v. Colelli & Asoc., Inc.*, 95 Ohio St.3d 325, 326, 2002-Ohio-2214, 767 N.E.2d 717 (reversing a judgment because "[t]he holding in [*Gill*] is limited to its facts").

**{¶ 47}** This court, in *Nationwide Mut. Ins. Co. v. Machniak* (1991), 74 Ohio App.3d 638, 641, 600 N.E.2d 266, held that, although admissible, a "felonious assault conviction does not affirmatively establish an intent to harm," because the mens rea under R.C. 2903.11 — the statute governing felonious assault — is "knowingly" rather than "purposely."

**{¶ 48}** In the instant case, on May 19, 2010, the court granted Nationwide's summary judgment motion, relying on *State Farm Fire and Cas. Co. v. Harpster*, Cuyahoga App. No. 90012, 2008-Ohio-3357. In *Harpster*, the insured pled guilty to aggravated assault, and State Farm used this conviction to deny coverage. The insured "submitted an affidavit that essentially recanted his earlier admissions of wrongdoing * * *." This court found that the self-serving affidavit "did not give rise to a triable issue of fact," and concluded that "the evidentiary materials submitted by State Farm more than adequately demonstrate an absence of genuine issues of material fact regarding whether Michael Harpster's conduct could be deemed accidental for purposes of insurance coverage, and whether he expected or intended bodily injury." Id. at ¶47, 51.

**{¶ 49}** We find the instant case distinguishable from *Harpster*, as plaintiff's evidence of W.S.'s mental state at the time of the offense is more than a mere recantation. To illustrate,

we turn to whether plaintiff identified a genuine issue of material fact regarding W.S.'s intent to damage plaintiff's house.

{¶ 50} The evidence related to W.S.'s intent included his March 20, 2007 juvenile adjudication admitting to attempted arson; an affidavit from a Nationwide Large Loss Claims Adjuster stating that the Nationwide "investigation revealed that the loss was the direct result of a criminal act committed by an insured, plaintiff's son W.S. * * *;" a report from the Cleveland Fire Department concluding that the fire had been intentionally set and listing W.S. as being on the scene;[1] and Nationwide's Special Investigations Unit's report concluding that the fire was deliberately set in the living room and that W.S. and a friend of his were the only people in the house at the time.

{¶ 51} According to the Nationwide investigative report, W.S. was arrested and taken to a juvenile detention center on the night of the fire. W.S. told the police that the fire started after his cigarette rolled onto the floor and went under the couch. However, Nationwide's investigator determined there was no evidence of the floor burning at the "incipient stage." Rather, the investigator determined that the "fire originated in the living room in and about the location of the coffee table that was located in front of the couch along the east wall of the living room. The evidence revealed that available combustibles (papers, clothing or

---

[1] This report also noted that W.S. was "[p]ossibly impaired by alcohol or drugs."

furniture) were ignited by open flame, subsequently igniting the couch and remaining furniture in the room on fire."

{¶ 52} On November 7, 2006, a phone call between plaintiff and a representative from Nationwide was taped and transcribed. According to the transcript of this call, plaintiff's son W.S. began having mental health and substance abuse problems in January of 2006 when his father passed away. W.S. attempted suicide in March of 2006 and was hospitalized several times that year. Asked if she believed W.S. accidentally started the fire with a cigarette, plaintiff said, "I don't think so. I was told it was no way that could've happened."

{¶ 53} In W.S.'s deposition, he testified that he admitted to charges of attempted arson and possession of cocaine in juvenile court. In October of 2006, when this incident occurred, W.S. was seeing a psychiatrist. Asked why, W.S. stated, "I don't know if it was because my father died from alcohol, or what it was, but I decided the way I wanted to deal with my grieving was by taking drugs and alcohol to the point where I couldn't realize what was happening, didn't have to worry about anything. I just liked to forget about it all the time and never actually dealt with it before." W.S. testified that he does not remember anything about the night of the fire, other than "waking back up to the couch I was laying on being on fire." W.S. testified that he does not remember starting the fire and he does not remember telling anyone that he started the fire.

{¶ 54} A medical specialist in Nationwide's claims department reviewed W.S.'s medical records in relation to his "treatment for alcohol and drug abuse" and "prior admissions for mental disorders." According to the specialist's report, W.S. was admitted to the hospital for various mental health issues six times between January and October of 2006. On October 27, 2006 — the date of the fire — the police took W.S. to the emergency room, where he was admitted to the hospital for the seventh time that year.

{¶ 55} The specialist stated that W.S.'s medical records supported that he suffered from depression and drug and alcohol abuse "that were spiraling out of control for the year prior to the fire." The specialist concluded that it "appears [W.S.'s] judgment and impulse control [were] impaired at the time of the fire."

{¶ 56} As part of plaintiff's opposition to Nationwide's summary judgment motion, she submitted an expert report from a clinical psychologist who reviewed W.S.'s medical and legal records.[2] Plaintiff alleges that the expert report concluded that W.S. suffered from a psychotic disorder that diminished his cognitive ability, and "he neither intended nor expected that the fire would spread and cause substantial damage to property * * *." Plaintiff cites to page six of the report; however, the report in the record contains only five pages and appears to end abruptly without a signature.

---

[2] On May 19, 2010, the court summarily denied Nationwide's motion to strike plaintiff's expert report as untimely. We express no opinion on the timeliness of plaintiff's expert report as this issue is not before us on appeal.

**{¶ 57}** In construing the evidence most strongly in favor of plaintiff, we find that there is a genuine issue of material fact regarding whether W.S. was capable of forming the intent to damage plaintiff's house by starting the fire. See *Kobsic v. Erie Ins. Co.* (Pa.Com.Pl, 2009), 7 Pa.D.&C.5th 48 (denying the insurance company's motion to dismiss based on an intentional act exclusion because a co-insured alleged she "was insane at the time she set fire to the home and was therefore not capable of forming intent under the general purview of the law"); *Erie Ins. Co. v. Stark* (C.A.4, 1992), 962 F.2d 349 (holding that the court erred in granting summary judgment because there was a genuine issue of material fact as to whether the insured deliberately set fire to the house or suffered from "a form of 'insanity' that precluded possession of the particular mental states required to invoke any of the non-coverage provisions" of the insurance policy).In our view, the admission to arson at the juvenile court level is evidence — possibly even prima facie evidence — of intent in the insurance context, which creates a rebuttable presumption and shifts the burden to the other party to show lack of intent. Our view is supported by the Ohio Supreme Court's decision in *Kollstedt*, which rejected the definition of insanity found in the criminal code, specifically former R.C. 2901.01(N), as the standard for an intentional act exclusion to an insurance contract.

**{¶ 58}** The court erred by granting summary judgment to Nationwide, and plaintiff's third assignment of error is sustained. Plaintiff's fourth and fifth assignments of error are moot pursuant to App.R. 12(A)(1)(c).

{¶ 59} In plaintiff's sixth and final assignment of error, she argues the following:

{¶ 60} "VI.   The trial court erred in granting Nationwide's motion to bifurcate the bad faith and breach of contract claims."

{¶ 61} Civ.R. 42(B) states that "[t]he court, after a hearing, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim * * *."   Whether to grant or deny a motion to bifurcate is within the sound discretion of the trial court.   *Thomas v. Nationwide Mut. Ins. Co.*, 177 Ohio App.3d 502, 2008-Ohio-3662, 895 N.E.2d 217.

{¶ 62} In the instant case, the court granted Nationwide's motion to bifurcate on November 24, 2009.   Nationwide's motion was premised on *Boone v. Vanliner Ins. Co.* (2001), 91 Ohio St.3d 209, 744 N.E.2d 154, which stands for the proposition that courts may stay discovery and bifurcate the trial of bad faith claims until the claims determining the underlying issue of insurance coverage have been decided.   Nationwide argued that not bifurcating the claims would be prejudicial because, in proving a bad faith claim, a plaintiff is entitled to discover information otherwise protected under the attorney-client privilege.   See *Boone* at 213-214.

{¶ 63} On appeal, plaintiff fails to establish an abuse of discretion by the trial court's granting Nationwide's motion to bifurcate.   Plaintiff argues that Nationwide failed to meet its burden under Civ.R. 42(B); however, avoiding prejudice, as set forth in *Boone*, is a factor

weighing in favor of bifurcation. Accordingly, plaintiff's sixth assignment of error is overruled.

{¶ 64} The denial of plaintiff's motion for partial summary judgment is affirmed. The granting of summary judgment to Nationwide is reversed and remanded.

{¶ 65} This cause is affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is, therefore, considered that said appellant and appellee split the costs herein.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

JAMES J. SWEENEY, JUDGE

MARY J. BOYLE, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR