[Cite as *Travelers Property Casualty Corp. v. Chiquita Brands Internatl., Inc.*, 2024-Ohio-1775.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| TRAVELERS PROPERTY CASUALTY CORPORATION, f.k.a. CONSTITUTION STATE INSURANCE COMPANY, | : | APPEAL NOS. | C-230094 C-230095 |
| | : | | C-230107 |
| | | TRIAL NOS. | A-1305780 |
| | : | | A-1400713 |
| THE TRAVELERS INDEMNITY COMPANY, as Successor in Interest to GULF INSURANCE COMPANY, | : | | |
| | : | *O P I N I O N.* | |
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | : | | |
| TRAVELERS CASUALTY AND SURETY COMPANY, | : | | |
| | : | | |
| and | | | |
| | : | | |
| ST. PAUL SURPLUS LINES INSURANCE COMPANY, | : | | |
| Plaintiffs-Appellees, | : | | |
| and | : | | |
| FEDERAL INSURANCE COMPANY, | : | | |
| WESTCHESTER FIRE INSURANCE COMPANY, | : | | |
| | : | | |
| PACIFIC EMPLOYERS INSURANCE COMPANY, | : | | |
| | : | | |
| INSURANCE COMPANY OF NORTH AMERICA, | : | | |
| | : | | |
| and | | | |
| | : | | |
| CENTURY INDEMNITY COMPANY, as Successor in Interest to CIGNA SPECIALTY INSURANCE COMPANY, | : | | |

2

f.k.a. CALIFORNIA UNION                    :
INSURANCE COMPANY,

                                           :

     Plaintiffs-Appellees/
     Cross-Appellants,                   :

  vs.                                       :

CHIQUITA BRANDS                            :
INTERNATIONAL, INC.,

                                           :

     Defendant-Appellant/
     Cross-Appellee.                     :


Civil Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are:  Affirmed in C-230094 and C-230095;
                                     Appeal Dismissed in C-230107

Date of Judgment Entry on Appeal: May 10, 2024


*Gallagher Sharp LLP*, *Richard C.O. Rezie* and *Gary L. Nicholson* for Plaintiffs-Appellees Travelers Property Casualty Corporation, Travelers Indemnity Company, St. Paul Fire and Marine Insurance Company, Travelers Casualty and Surety Company, and St. Paul Surplus Lines Insurance Company,

*Tressler LLP*, *Todd S. Schenk*, *Katz, Teller, Brandt & Hild*, *LPA*, *Matthew A. Rich*, *Robert A. Pitcairn*, *Faulkner & Tepe, LLP*, and *John C. Scott* for Plaintiffs-Appellees/Cross-Appellants Federal Insurance Company, Westchester Fire Insurance Company, Pacific Employers Insurance Company, Insurance Company of North America, and Century Indemnity Company,

*Blank Rome LLP*, *Lisa M. Campisi*, *Michael L. Cioffi* and *Thomas H. Stewart* for Defendant-Appellant/Cross-Appellee Chiquita Brands International.

**WINKLER, Judge.**

{¶1}   In these consolidated appeals, defendant-appellant/cross-appellee Chiquita Brands International, Inc., ("Chiquita") appeals the trial court's grants of summary judgment against it in two actions for a declaratory judgment brought by two groups of insurance companies:  one group led by plaintiff-appellee Travelers Property Casualty Corporation (collectively, "Travelers")[1] and one led by plaintiff-appellee/cross-appellant Federal Insurance Company (collectively, "Federal").[2]   In those complaints, Travelers and Federal each asked the trial court to declare that the insurers are not obliged to indemnify Chiquita for numerous tort claims against Chiquita that it had settled.

{¶2}   In its consolidated appeals, Chiquita raises one assignment of error, arguing that the trial court erred in granting summary judgment against it in the two declaratory-judgment actions.

{¶3}   For the following reasons, we overrule Chiquita's assignment of error and affirm the judgments of the trial court.  We also dismiss Federal's cross-appeal numbered C-230107 because Federal is not aggrieved by the trial court's judgment and thus it does not have standing to appeal.

---

[1] This group includes plaintiffs-appellees Travelers Property Casualty Corporation, Travelers Indemnity Company, St. Paul Fire and Marine Insurance Company, Travelers Casualty and Surety Company, and St. Paul Surplus Lines Insurance Company.

[2] This group includes plaintiffs-appellees/cross-appellants Federal Insurance Company, Westchester Fire Insurance Company, Pacific Employers Insurance Company, Insurance Company of North America, and Century Indemnity Company.  At various times during the litigation, this group is also referred to collectively as "Chubb," the informal name for the Chubb Group of Insurance Companies, of which these companies are member insurers.  For consistency with the case captions, "Federal" is used.

## Background

{¶4} Travelers and Federal each filed a declaratory-judgment action against Chiquita seeking a judicial determination that the insurance companies did not have a duty to indemnify Chiquita for numerous tort claims that had been filed against Chiquita that it had settled. Those claims alleged that from 1989 through 2004 Chiquita had illegally financed terrorist groups in the Republic of Colombia and those groups had caused injury to various American plaintiffs and Chiquita was liable for those injuries under the federal Anti-Terrorism Act (the "ATA"). These cases (collectively, the "ATA Lawsuits") have been pending in federal court in Florida. In parallel, Chiquita and its various insurers have been litigating the scope of the insurance coverage for the ATA Lawsuits, which is the subject of this appeal.

### A. The ATA Lawsuits in Florida

{¶5} First, we summarize the ATA Lawsuits and the liability for Chiquita for which it sought insurance coverage. The underlying litigation is a consolidated civil action to recover damages for the deaths of United States citizens in Colombia. *In re Chiquita Brands Internatl., Inc.*, 284 F.Supp.3d 1284, 1291 (S.D.Fla.2018). The plaintiffs are a missionary organization and the relatives and representatives of six Americans who were kidnapped and killed in the 1990s (collectively, the "ATA Plaintiffs") by a Colombian terrorist organization known as the Fuerzas Armadas Revolucionarias de Colombia—"the Armed Revolutionary Forces of Colombia" or the "FARC." *Id.* The ATA Plaintiffs brought claims against Chiquita under the civil-liability provisions of the Anti-Terrorism Act, 18 U.S.C. 2333(a), alleging that Chiquita

committed an actionable "act of international terrorism" by providing material support to FARC by funneling money to it over a nine-year period. *Id*.[3]

{¶6} The case proceeded to cross-motions for summary judgment in 2018, where Chiquita sought summary judgment against the ATA Plaintiffs' theories of liability that it aided and abetted FARC and conspired with FARC and the ATA Plaintiffs sought summary judgment against two of Chiquita's affirmative defenses, including common-law defenses of duress and necessity. The federal trial court granted summary judgment against the ATA Plaintiffs on the claims for aiding and abetting FARC and the conspiring with FARC but left the claim for providing material support to FARC for resolution at trial. Not long after, Chiquita and the ATA Plaintiffs settled the ATA Lawsuits in February of 2018.

### B.  The insurance-coverage actions in Ohio

{¶7} Second, we summarize the parallel insurance-coverage actions in Ohio state court. Since the start of the ATA Lawsuits, Chiquita sought coverage for its defense costs and any potential liability under its insurance policies from its various insurers. Over two sets of actions, Chiquita and its insurers have litigated the scope of the insurance coverage in Ohio state court. These cases proceeded in parallel to the ATA Lawsuits. There are two groups of insurance-coverage actions, one for each of the two duties in Chiquita's liability policies. The first in 2008 to determine whether Chiquita's various insurers' duties to defend Chiquita obligated them to cover Chiquita's defense costs incurred in litigating the ATA Lawsuits. The second group

---

[3] The ATA Plaintiffs also asserted secondary liability, but the trial court rejected that theory of liability prior to the eventual settlement. *See In re Chiquita Brands Internatl., Inc.*, 284 F.Supp.3d at 1314, citing *In re Chiquita Brands Internatl., Inc.*, S.D.Fla. Nos. 08-01916-MD-MARRA and 08-20641-CIV-KAM, 2015 U.S. Dist. LEXIS 1283 (Jan.6, 2015). As such, we do not consider any potential secondary liability under the ATA as part of the loss at issue here.

include the cases that are now on appeal here and were brought to determine whether Chiquita's various insurers' duties to indemnify Chiquita obligated them to pay the settlement amounts Chiquita negotiated with the ATA Plaintiffs. We touch briefly on each set of insurance-coverage actions in turn.

### 1. Chiquita I *and the duty to defend*

**{¶8}** In 2008, Chiquita brought a declaratory-judgment action to judicially determine the coverage for the ATA Lawsuits against some of its insurance companies, specifically American Motorists Insurance Company, Lumbermens Mutual Casualty Company, and Federal. Those insurers then impleaded another insurer, National Union Fire Insurance Company of Pittsburgh ("National Union") seeking contribution. At issue was whether National Union's duty to defend Chiquita under its insurance policies extended to covering Chiquita's costs it incurred in defending the ATA Lawsuits.[4]

**{¶9}** The 2008 case proceeded to the summary judgment, where the trial court partially granted Chiquita's motion for summary judgment, ruling that "National Union has a duty under the National Union Primary Policies to reimburse Chiquita for all of the reasonable defense costs paid in connection with the [ATA Lawsuits]." National Union then appealed to this court, which reversed the judgment of the trial court and remanded the cause for further proceedings. *Chiquita Brands Internatl., Inc. v. Natl. Union Ins. Co.*, 2013-Ohio-759, 988 N.E.2d 897 (1st Dist.) ("*Chiquita I*").[5]

---

[4] While *Chiquita I* was pending, Chiquita settled with Federal, American Motorists, and Lumbermans Mutual so the case proceeded only between Chiquita and National Union.

[5] This case is the third appeal addressing the insurance-coverage litigation between Chiquita and its insurers. The second concerned whether restitution was an appropriate remedy for National Union to recoup amounts it had paid to Chiquita under reservation during the litigation. *See Chiquita Brands Internatl., Inc. v. Natl. Union Fire Ins. Co.*, 2015-Ohio-5477, 57 N.E.3d 97 (1st Dist.).

This court held that National Union had no duty to defend because Chiquita's actions, as characterized in the complaints in the ATA Lawsuits, did not constitute "occurrences" that were covered by the National Union policies. *Id.* at ¶ 29.

{¶10}  Specifically, each of the National Union policies "cover[ed] 'bodily injury' if the 'bodily injury' * * * is caused by an 'occurrence' " and "[a]n 'occurrence' is 'an accident, including continuous or repeated exposure to substantially the same general harmful conditions.' " *Id.* at ¶ 10.  This court noted that, "Ohio public policy generally prohibits obtaining insurance to cover damages caused by intentional torts" and that "inherent in a policy's definition of 'occurrence' is the concept of an incident of an accidental, as opposed to an intentional, nature." *Id.* at ¶ 11.  This court concluded that the causes of action alleged in the ATA Lawsuits "were all based on Chiquita's alleged intentional conduct" because "[t]he complaints [in the ATA Lawsuits] did not allege conduct that could be reasonably construed as negligent or accidental." *Id.* at ¶ 18.  Because "the ATA Lawsuits alleged intentional conduct, the complaints * * * did not constitute 'occurrences' within the meaning of the policy language." *Id.* at ¶ 11, quoting *Gearing v. Nationwide Ins. Co.*, 76 Ohio St.3d 34, 38, 665 N.E.2d 1115 (1996).  Consequently, we reversed the trial court's judgment and held National Union's duty to defend Chiquita did not obligate it to cover Chiquita's defense costs it had incurred in defending the ATA Lawsuits.

### 2.  The cause on appeal here and the duty to indemnify

{¶11}  In 2013, Travelers and Federal each brought a declaratory-judgment action against Chiquita seeking a judicial determination that the insurers' duty to indemnify Chiquita did not obligate them to cover the settlement amounts for the ATA Lawsuits.   These actions are what are now on appeal.  In May 2014, the trial court

consolidated the two actions and then stayed them until September 2019, when the ATA Lawsuits had been settled and dismissed.

{¶12} After the trial court lifted the stay, the parties filed cross-motions for judgment on the pleadings. Travelers and Federal each argued that they had no duty to indemnify Chiquita based on the collateral estoppel effect of *Chiquita I*. Chiquita argued that *Chiquita I* had no preclusive effect. The trial court ruled, on the limited record before it, that it could not find *Chiquita I* had a preclusive effect because the parties, insurance policies, and issues were not the same as in *Chiquita I*. However, the trial court ruled that Travelers and Federal had no duty to defend Chiquita in the ATA Lawsuits because there was no occurrence under the policies as none of Chiquita's actions as alleged in the underlying lawsuits could be construed as accidental.

{¶13} The cases proceeded to cross-motions for summary judgment. Travelers and Federal each had similar arguments for seeking summary judgment: the absence of an occurrence; that the injuries occurred outside of some of the policies' policy period; the policies' expected-or-intended-injury exclusions; Ohio public policy barred coverage for intentional torts; Chiquita's breach of the policies by settling without the insurers' consent; the collateral estoppel and stare decisis effect of *Chiquita I*; and that the insurers had no duty to indemnify in the absence of a duty to defend. Chiquita argued in its motion for summary judgment that the insurers are obligated to provide indemnification for the settlements of the ATA Lawsuits under the language of the insurance policies.

{¶14} The trial court granted Travelers' and Federal's motions for summary judgment and denied Chiquita's cross-motions for summary judgment on January 31, 2023. To the trial court, Chiquita had not adduced facts or demonstrated underlying

8

accidental liability and therefore the facts demonstrated there was no "occurrence" as defined in the insurance policies and thus the insurers had no duty to indemnify Chiquita for the settlements of the ATA Lawsuits.[6] The trial court reiterated its earlier holding on the motions for judgment on the pleadings that *Chiquita I* did not have a preclusive effect, but it held that the case had precedential value. The trial court entered final judgment in favor of Travelers and Federal and against Chiquita on January 31, 2023.

{¶15} Chiquita now timely appeals both judgments against it, which we have consolidated.

## Law and Analysis

{¶16} In its consolidated appeals, Chiquita raises one assignment of error, arguing that the trial court erred in both declaratory-judgment cases by denying Chiquita's motions for summary judgment and granting the insurers' motions for summary judgment.

{¶17} An appellate court reviews a trial court's ruling on a motion for summary judgment de novo, applying the same standard applied by the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). A reviewing court must independently review the record with no deference to the trial court's decision to determine whether summary judgment is appropriate. *Smathers v. Glass*, 172 Ohio St.3d 84, 2022-Ohio-4595, 222 N.E.3d 554, ¶ 30.

{¶18} Summary judgment is appropriate under Civ.R. 56 when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine

---

[6] The trial court did not reach whether the expected-or-intended-injury exclusions applied and so we do not reach the scope of those exclusions here.

issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998), citing *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus.

{¶19} On a motion for summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party must then point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293.

{¶20} An insurance policy is a contract, and the relationship between the insurer and the insured is purely contractual in nature. *Nationwide Mut. Ins. Co. v. Marsh*, 15 Ohio St.3d 107, 109, 472 N.E.2d 1061 (1984). The interpretation and construction of insurance policies is a matter of law to be determined by the court using rules of construction and interpretation applicable to contracts generally. *Gomolka v. State Auto. Ins. Co.*, 70 Ohio St.2d 166, 167-168, 436 N.E.2d 1347 (1982); *Equity Diamond Brokers, Inc. v. Transnatl. Ins. Co.*, 151 Ohio App.3d 747, 2003-Ohio-1024, 785 N.E.2d. 816, ¶ 10 (1st Dist.). Where an insurance policy's provisions are clear and unambiguous, courts must apply the terms as written and may not enlarge the contract by implication to embrace an object distinct from that contemplated by the parties. *Gomolka* at 168; *Equity Diamond Brokers* at ¶ 11.

### I.  Chiquita's Appeals

**{¶21}**   First, we address Chiquita's appeals.  In its sole assignment of error, Chiquita argues the trial court erred when it granted summary judgment in favor of Travelers and Federal in their declaratory-judgment actions and denied Chiquita's motions for summary judgment.  Chiquita argues the trial court's summary-judgment decisions were wrong for several reasons.  First, Chiquita argues the trial court improperly shifted the burden of proof onto Chiquita, and that Travelers and Federal each failed to meet their burden to adduce facts that Chiquita expected or intended to injure the ATA Plaintiffs.  Second, Chiquita argues that the trial court improperly applied the "substantially certain" test to determine that Chiquita intended to injure the ATA Plaintiffs, denying it coverage.  Third, Chiquita argues that the trial court erred in concluding Chiquita had raised a nonviable affirmative defense of extortion.  Fourth, Chiquita argues that the trial court erred in deciding it was bound by dicta in this court's holding in *Chiquita I*.  We address each argument in turn.

### A.  Burden of Proof

**{¶22}**   First, Chiquita argues that the trial court improperly shifted the burden of proof to Chiquita to prove the existence of an occurrence in both declaratory-judgment actions.  Generally, the party in the lawsuit urging the affirmative of a proposition bears the burden of establishing the matters raised in its complaint.  *Continental Ins. Co. v. Whittington*, 71 Ohio St.3d 150, 160, 642 N.E.2d 615 (1994).  Where both parties seek a judicial declaration of the extent of the insurance contract, both parties have a burden of proof.  *See id*. at 160, fn. 6.  Travelers and Federal brought declaratory-judgment actions against Chiquita, and Chiquita counterclaimed in both actions.  Because the three parties each sought a judicial determination of the

11

scope of the insurance coverage, the three parties each bore a burden of proof to prevail on their claims.

**{¶23}** Similarly, a movant seeking summary judgment bears a burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Dresher*, 75 Ohio St.3d at 292-293, 662 N.E.2d 264. Travelers and Federal each moved for summary judgment in their favor in both actions and Chiquita filed cross-motions for summary judgment in its favor in both actions. Thus, both parties bore the burden of any movant to demonstrate that they are entitled to summary judgment. *See id.*

**{¶24}** Thus, because Chiquita counterclaimed in both actions seeking declaratory judgment on the scope of the insurance coverage and Chiquita moved for summary judgment in its favor on those counterclaims, the trial court did not err in assigning Chiquita a burden to demonstrate it was entitled to summary judgment in its favor.

### *B. Whether Chiquita intended to harm the ATA Plaintiffs*

**{¶25}** Second, Chiquita argues that in both declaratory-judgment actions the trial court improperly granted summary judgment in favor of the insurers and against Chiquita because there was a genuine issue of material fact as to whether Chiquita intended to injure the ATA Plaintiffs. Chiquita contends that because it conclusively denied any intent to injure the ATA Plaintiffs, its intent to injure could not be inferred as a matter of law, and because the insurers did not offer any contrary evidence of Chiquita's intent, Travelers and Federal were not entitled to summary judgment in their favor.

**{¶26}** Chiquita's insurance policies cover "occurrences," which the insurance policies at issue defined as, among other things, "accidents." The Ohio Supreme Court has given the word "accident" in a commercial general liability insurance policy its natural and commonly accepted meaning as a harm that is "unexpected as well as unintended." *See Motorists Mut. Ins. Co. v. Ironics, Inc.*, 168 Ohio St.3d 467, 2022-Ohio-841, 200 N.E.3d 149, ¶ 46, quoting *Westfield Ins. Co. v. Custom Agri Sys.*, 133 Ohio St.3d 476, 2012-Ohio-4712, 979 N.E.2d 269, ¶ 11-12. Inherent in the word "accident" is also the concept that an accidental outcome is fortuitous as opposed to intended. *See Ohio Northern Univ. v. Charles Constr. Serv., Inc.*, 155 Ohio St.3d 197, 2018-Ohio-4057, 120 N.E.3d 762, ¶ 27. Thus, Chiquita's insurance policies cover unintentional and unintended losses.

**{¶27}** The trial court ruled on summary judgment that Chiquita intended to injure the ATA Plaintiffs and thus Travelers and Federal did not owe indemnity based on the doctrine of inferred intent. An insured may have a subjective intent to cause harm, which bars coverage. *See Allstate Ins. Co. v. Campbell*, 128 Ohio St.3d 186, 2010-Ohio-6312, 942 N.E.2d 1090, ¶ 9. Where there is no evidence of an insured's direct intent to cause harm and the insured denies the intent to cause any harm, the doctrine of inferred intent allows a court to infer an insured's intent to injure—thus barring coverage for accidents—as a matter of law on summary judgment where the insured's act "necessarily results" in the resulting harm. *See id.* Where the insured's act does not necessarily result in harm and the insured denies that harm was intended or expected, there is an issue of fact of whether injury was expected or reasonably expected. *See id.* at ¶ 58. Chiquita denied any intent to harm the ATA Plaintiffs; the issue before the trial court was whether Chiquita's actions necessarily resulted in the

injuries to the ATA Plaintiffs such that its intent to injure them could have been inferred as a matter of law.

**{¶28}** The basis for liability in the ATA Lawsuits was "whether material support was given 'knowing and intending' it would be used to prepare for, or carry out, the killing of Americans." *In re Chiquita Brands Internatl., Inc.*, 284 F.Supp.3d at 1319. It is not in dispute that Chiquita had intentionally made regular payments to FARC over a period of time to prevent FARC from attacking the company's employees or destroying its property and that during the time Chiquita was making those payments, FARC had kidnapped and killed at least six Americans. Chiquita contends that its salutary motive to protect its employees from retaliatory attacks by FARC negates any intent to injure the ATA Plaintiffs. However, the federal trial court held when denying Chiquita's motion for summary judgment on the issue of the requisite intent for liability under the ATA that:

> a salutary motive underlying the commission of a crime does not necessarily negate mens rea; it may explain the background circumstances leading up to the crime, but does not resolve, as a matter of law, whether material support was given "knowing or intending" it would be used to prepare for, or carry out, the killing of Americans in violation of [the ATA].

*Id.* Thus, if a jury concluded Chiquita was liable under the ATA, the jury would have to find Chiquita made payments to FARC knowing or intending that those payments would be used to prepare or carry out acts of terrorism. Such a finding would take the liability out of the realm of an accident.

14

**{¶29}** However, Chiquita argues that under the doctrine of inferred intent as articulated by the Ohio Supreme Court, to be able to infer intent, the court must infer a specific intent to injure the ATA Plaintiffs. Chiquita argues that even if it intentionally made payments to a known terrorist group, it did not specifically intend to injure the ATA Plaintiffs and thus the harm that befell the ATA Plaintiffs was accidental. In *Campbell*, the Ohio Supreme Court held it could not infer the intent of the insured teenagers to injure drivers after the teenagers had intentionally placed a Styrofoam target deer on a hilly roadway at night. *Campbell*, 128 Ohio St.3d 186, 2010-Ohio-6312, 942 N.E.2d 1090, at ¶ 2. The court reasoned that although one driver crashed, some drivers had avoided the deer, so the placement of the deer would not necessarily result in injuries to the crashed driver in the same way that a victim's injuries are intrinsically tied to an insured's actions in the cases of murder and sexual molestation where the doctrine of inferred intent was first developed. *See id.* at ¶ 51.

**{¶30}** *Campbell*'s facts are not directly analogous to the facts here. In *Campbell*, the insureds themselves placed the target deer in the way of drivers and one of those drivers was harmed, unlike Chiquita which made payments to FARC and FARC, as a third party, caused harm to the ATA Plaintiffs through its own acts of terrorism. Also, acts of terrorism directly result in harm to people, unlike the target deer where some drivers were able to avoid the deer without crashing.

**{¶31}** The Eighth District addressed whether an insured's intent to cause tortious harm caused by a third party can be inferred under *Campbell* in *Acuity, A Mut. Ins. Co. v. Siding & Insulation Co.*, 2016-Ohio-1381, 62 N.E.3d 937 (8th Dist.). In *Acuity*, the insured company sought coverage for liability arising under the federal Telephone Consumer Protection Act from the insured's third-party marketer sending

unsolicited faxes to the plaintiffs. *Id.* at ¶ 22. The insured disclaimed an intent to send unsolicited faxes and the third-party sender told the insured that it only sent faxes to consenting recipients. *See id.* The Eighth District applied *Campbell* and held that an insured's intentional act necessarily results in its "natural and expected" consequences, even where a third party caused the injuries. *Id.* at ¶ 23, quoting *Campbell* at ¶ 48. Thus, the Eighth District held the trial court properly inferred the insured company intended the harm to the recipients because the insured engaged the third party to send faxes and that property damage the third party caused by depleting the recipients' paper and toner is "inherent in the very nature of sending a junk fax." *See id.* at ¶ 23-24.

{¶32} In both *Acuity* and here, the insured did not subjectively intend to harm anyone, rather a third party paid by the insured caused the harm. While Chiquita certainly did not hire FARC to commit acts of terror on its behalf, its actions led to the funding of FARC, which is, as described by the federal trial court, "a known terrorist group that has only violent organizational goals—with no philanthropical, educational, or socially useful purposes." *See In re Chiquita Brands Internatl., Inc.*, 284 F.Supp.3d at 1320. Subjectively, Chiquita may have not wanted to hurt anyone and only cared for the safety of its employees and property, but it achieved those goals through paying FARC not to attack Chiquita. The natural and expected consequences of sending protection money to a terrorist group engaged in a campaign of violence is that the group would use the money to continue that violent campaign but select different targets.

{¶33} Thus, Chiquita's intentional actions necessarily resulted in the injuries to the ATA Plaintiffs. Liability under the ATA would require a jury finding that

Chiquita intended or knew that its payments would support acts of terrorism. The natural and probable consequences of knowingly supporting acts of terrorism is that people would be harmed. Consequently, that harm is intentional, not accidental. Thus, the trial court properly inferred the intent of Chiquita to injure the ATA Plaintiffs and properly concluded the harm to the ATA Plaintiffs was not an "occurrence" covered under Chiquita's insurance policies.

### C. The "substantially certain" test to infer intent

{¶34} Third, Chiquita argues that the trial court erroneously concluded that its subjective intent was irrelevant because harm to the ATA Plaintiffs was "substantially certain" to occur. The trial court invoked the doctrine of inferred intent discussed above, but then based its ruling on the Ohio Supreme Court's framework inferring an insured's intent to injure where the injury is "substantially certain to occur" in *Gearing v. Nationwide Ins. Co.*, 76 Ohio St.3d 34, 665 N.E.2d 1115 (1996). Chiquita argues the trial court's reliance on *Gearing* and the substantially-certain test it articulated was misplaced because *Gearing* and the substantially-certain test were overruled by *Campbell* and the doctrine of inferred intent discussed above. While Chiquita is correct that *Gearing* was overruled, because the trial court correctly inferred Chiquita's intent to injure the ATA Plaintiffs had it applied the inferred-intent doctrine in *Campbell*, the trial court's misplaced reliance was harmless error.

{¶35} In *Campbell*, the Ohio Supreme Court revisited its holding in *Gearing* and expressly rejected the "substantially certain" test that *Gearing* laid out. *Campbell*, 128 Ohio St.3d 186, 2010-Ohio-6312, 942 N.E.2d 1090. Recognizing that its post-*Gearing* jurisprudence "generated uncertainty as to the scope of the doctrine," the *Campbell* court reviewed the development of inferred-intent law. *Id*. at ¶ 35. The

insurers in *Campbell* argued that the Ohio Supreme Court should apply the substantially-certain test. *Id.* at ¶ 52. The *Campbell* court thoroughly analyzed that test and, in a section entitled "The 'Substantially Certain' Test," ultimately rejected it, stating:

> Justice Cook argued that *Gearing* outlined a two-part analysis. First is a determination whether the insured directly intended the injury. If no direct intention exists, then the court determines whether the insured's act was substantially certain to cause injury. That approach is flawed, however.

*Id.* at ¶ 54, citing *Buckeye Union Ins. Co. v. New England Ins. Co.*, 87 Ohio St.3d 280, 288-289, 720 N.E.2d 495 (1999) (Cook, J., concurring). The court continued:

> We now clarify that the doctrine of inferred intent applies only in cases in which the insured's intentional act and the harm caused are intrinsically tied so that the act has necessarily resulted in the harm. Because this test provides a clearer method for determining when intent to harm should be inferred as a matter of law, we hold that courts are to examine whether the act has necessarily resulted in the harm—rather than whether the act is substantially certain to result in harm.

*Id.* at ¶ 56. Thus, in *Campbell*, the Ohio Supreme Court overruled the substantially-certain test for inferring an insured's intent to injure. Because the trial court relied on *Gearing* and the substantially-certain test, it applied the wrong legal standard.

{¶36} However, this misplaced reliance was harmless. Civ.R. 61 instructs us to "disregard any error that does not affect the substantial rights of the parties." The Ohio Supreme Court has consistently instructed that reviewing courts may "not

18

reverse a correct judgment merely because it is based on erroneous reasons." *See Stammco, L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St.3d 231, 2013-Ohio-3019, 994 N.E.2d 408, ¶ 51. As addressed above, the trial court reached the correct result that there was no "occurrence" had it applied *Campbell* because Chiquita's intentional acts necessarily resulted in the harm to the ATA Plaintiffs. Without an outcome-determinative error, the trial court's erroneous reliance on an outdated test was harmless error. *See Setters v. Durrani*, 2020-Ohio-6859, 164 N.E.3d 1159, ¶ 22 (1st Dist.).

### D. A nonviable affirmative defense of extortion

**{¶37}** Fourth, Chiquita argues that in the declaratory-judgment action by Federal, the trial court asserted as an additional basis for granting summary judgment in favor of Federal that Chiquita was interposing an ultimately nonviable affirmative defense of extortion.[7] Chiquita contends it never asserted an affirmative defense of extortion but rather argued that there was no evidence that Chiquita intended to injure the ATA Plaintiffs and that the evidence presented instead showed that Chiquita made the payments to protect its employees from injury. Federal concedes that the trial court misunderstood Chiquita's use of the common refrain of the payments to FARC as "extortion payments" as raising an affirmative defense of extortion. However, the error is harmless because the trial court appropriately considered Chiquita's subjective intent in making the payments when it correctly inferred Chiquita's intent to injure because its intentional payments to FARC, whatever the motives, necessarily resulted in the harm to the ATA Plaintiffs. That the trial court mistakenly characterized

---

[7] This arose only in the summary-judgment decision for Federal's declaratory-judgment action and not in Travelers' action.

Chiquita's intent as an "affirmative defense of extortion" is harmless when its analysis was otherwise correct. *See* Civ.R. 61; *Stammco* at ¶ 51.

### E. Trial court's reliance on Chiquita I

**{¶38}** Fifth, Chiquita argues that the trial court erred in concluding that it was bound under stare decisis by this court's 2013 holding in *Chiquita I*, 2013-Ohio-759, 988 N.E.2d 897. Specifically, the trial court concluded that:

> However, this [c]ourt is bound by the decisions of the First District. While the determination regarding indemnity in *Chiquita I* may well be dicta, Chiquita has not adduced facts or demonstrated underlying accidental liability despite extensive discovery. This [c]ourt is bound by stare decisis and concludes that it is bound by the rationale of *Chiquita I*. Consistent with this opinion, there is "no occurrence" under the Federal policies and therefore, the [c]ourt concurs, there is no coverage. *See Chiquita I*, 2013-Ohio-759, at ¶ 16-19.[8]

Chiquita argues that the trial court erred in concluding that a statement in *Chiquita I* was dicta but nevertheless held that statement had a binding precedential effect on the trial court.

**{¶39}** In *Chiquita I*, this court held that National Union did not have a duty to defend Chiquita because there was no "occurrence" under National Union's insurance policy. *Chiquita I* at ¶ 19. The trial court was referring to this court's explanation that it was not reaching the issue of the policy's exclusion for intentional acts, stating "[b]ecause the conduct in those complaints was outside the scope of

---

[8] The passage quoted here is the same in the trial court's summary-judgment decision in both Travelers' and Federal's declaratory-judgment actions.

coverage, National Union did not have a duty to defend Chiquita in the underlying suits *or indemnify Chiquita should it eventually be found liable for damages in those suits*." (Emphasis added.) *Id.*

{¶40} The trial court correctly identified that the statement was dicta. Expressions of a court's opinion that go beyond the issues properly before the court are mere dicta and "by definition, cannot be the binding law of the case." *Gissiner v. Cincinnati*, 1st Dist. Hamilton No. C-070536, 2008-Ohio-3161, ¶ 15. The statement in *Chiquita I* was dicta because it addressed the duty to indemnify when the sole duty at issue was the insurer's duty to defend. The two duties have long been viewed as independent from each other. *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 112 Ohio St.3d 482, 2006-Ohio-6551, 861 N.E.2d 121, ¶ 33, citing 14 Russ and Segalla, *Couch on Insurance*, Section 200:3 (3d Ed.2005).

{¶41} The trial court ruled on National Union's duty to defend. The trial court did not rule upon National Union's duty to indemnify. Accordingly, the assignment of error in *Chiquita I* was limited to the duty to defend:

> In its first assignment of error, [National Union] contends that the trial court erred in finding that it had a duty to defend Chiquita in the underlying lawsuits. It argues that the underlying actions do not allege an "occurrence" as defined in the policies because Chiquita faced liability only for intentional conduct.

*Chiquita I*, 2013-Ohio-759, 988 N.E.2d 897, at ¶ 6. Thus, the issue of indemnity was not before this court in *Chiquita I* and the phrase commenting on that issue was dicta.

{¶42} However, the trial court's invocation of the dicta was not reversible error. The trial court noted correctly that the statement may be dicta but concluded

the dicta was ultimately correct after analyzing whether there was an "occurrence" under the various insurance policies. To the extent that the trial court relied on the dicta, any potential error in doing so was harmless because it arrived at the correct conclusion. *See* Civ.R. 61; *Stammco*, 136 Ohio St.3d 231, 2013-Ohio-3019, 994 N.E.2d 408, at ¶ 51.

{¶43} In sum, the trial court correctly granted summary judgment against Chiquita and in favor of Travelers and Federal. Chiquita was properly assigned a burden to show there was not an occurrence because it counterclaimed for declaratory judgment and then moved for summary judgment in its favor. The trial court properly inferred Chiquita's intent to injure the ATA Plaintiffs because its intentional payments necessarily resulted in the harm to the ATA Plaintiffs. While the trial court relied on the wrong legal test, misunderstood one argument as an affirmative defense, and invoked dicta to arrive at that conclusion, the trial court nevertheless arrived at the correct conclusion.

{¶44} Consequently, we overrule Chiquita's assignment of error.

## II. Federal's Cross-Appeal

{¶45} Next, we address Federal's cross-appeal, numbered C-230107. Federal raises two assignments of error arguing the trial court erred in its rulings on its motion for judgment on the pleadings and on its motion for summary judgment. However, we must first consider whether Federal has standing to cross-appeal. Although no party has raised the issue, because standing is jurisdictional, a court may raise the issue sua sponte. *City of Cleveland v. 3006 Montclair Ave., LLC*, 8th Dist. Cuyahoga No. 112695, 2024-Ohio-1274, ¶ 17.

**{¶46}** " 'Standing is a preliminary inquiry that must be made before a court may consider the merits of a legal claim.' " *State ex rel. Merrill v. Ohio Dept. of Natural Resources*, 130 Ohio St.3d 30, 2011-Ohio-4612, 955 N.E.2d 935, ¶ 27, quoting *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, ¶ 9. To have appellate standing, a party must be "aggrieved by the final order appealed from." *Ohio Contract Carriers Assn. v. Pub. Utilities Comm.*, 140 Ohio St. 160, 42 N.E.2d 758 (1942), paragraph one of the syllabus; *see Reese v. Reese*, 2019-Ohio-2810, 139 N.E.3d 1288, ¶ 8 (1st Dist.). Accordingly, a party who is not aggrieved or prejudiced by a judgment does not have standing to appeal. *See Reese* at ¶ 8. Without standing, a party's appeal must be dismissed. *See State v. Sweeting*, 1st Dist. Hamilton Nos. C-170512 and C-170513, 2019-Ohio-1970, ¶ 9.

**{¶47}** To be an "aggrieved party" with standing to appeal, a party must be able to demonstrate a present interest in the subject-matter of the litigation and must be aggrieved or prejudiced by the judgment of the lower court. *Willoughby Hills v. C. C. Bar's Sahara*, 64 Ohio St.3d 24, 26, 591 N.E.2d 1203 (1992), citing *Ohio Contract Carriers* at 161. Federal is not an "aggrieved party" because the trial court granted Federal's motion for summary judgment in its entirety and ruled that Federal did not owe indemnity to Chiquita for the ATA Lawsuits. Nevertheless, Federal argues the trial court erred in its reasoning to enter summary judgment in Federal's favor. A party is not aggrieved or prejudiced by a judgment where the trial court grants the relief requested but based on a different rationale than the party may prefer. *See Reese* at ¶ 6, 9 (appellant was not an "aggrieved party" and thus lacked standing to appeal where the trial court granted appellant's Civ.R. 60(B) motion based on mistake instead of fraud.).

**{¶48}** Because Federal is not an aggrieved party, we dismiss sua sponte Federal's cross-appeal numbered C-230107.

## Conclusion

**{¶49}** Having overruled the assignment of error and dismissed the cross-appeal, we affirm the judgments of the trial court.

Judgment accordingly.

**BOCK, P.J.,** and **KINSLEY**, **J.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.