[Cite as *Feick v. Miller*, 2025-Ohio-1538.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| RALPH FEICK, Admr., | : | Case No. 23CA14 |
| | : | |
| Plaintiff-Appellant, | : | |
| | : | |
| v. | : | |
| | : | |
| JEREMY MILLER, et al., | : | DECISION AND JUDGMENT ENTRY |
| | : | |
| Defendants-Appellees. | : | |
| | : | **RELEASED: 04/22/225** |
| | : | |

_____
APPEARANCES:

William B. Summers, Parkersburg, West Virginia, for appellant.

Richard M. Garner and Lucas P. Baker, Collins, Roche, Utley & Garner LLC, Dublin, Ohio, for appellee, American Modern Property and Casualty Insurance Company.[1]
_____

Wilkin, J.

{¶1}    Appellant, Ralph Feick, administrator of the estate of Taylor Austin Feick (hereinafter referred to as "appellant"), appeals a Washington County Court of Common Pleas judgment entry that granted American Modern Property and Casualty Insurance Company's (hereinafter referred to as "American Modern") motion for judgment on the pleadings.  Although appellant's brief contains a "Summary of Argument" and "Argument" section with headings, it fails to assign specific errors.

{¶2}    Appellant filed a wrongful death complaint against Jeremy and Tamea Miller, who had a homeowner's insurance policy with American Modern.  American

---

[1] While represented by counsel in the trial proceedings, Defendant, Jeremy Miller, did not participate in this appeal.  Tamea Miller was originally named a defendant, but the trial court granted her motion to dismiss on January 25, 2023.  Thus, only American Modern Property and Casualty Insurance Company participated in this appeal.

Modern filed a motion to intervene and subsequently filed a motion for judgment on the pleadings pursuant to Civ.R. 12(C), which the trial court granted. After reviewing the parties' arguments, the record, and the applicable law, we are not persuaded by appellant's argument and affirm the trial court's entry granting the Civ.R. 12(C) motion.

PROCEDURAL BACKGROUND

{¶3} On July 29, 2022, appellant filed a wrongful death complaint on behalf of his son's estate against Jeremy Miller and Tamea Miller. The complaint alleged that on August 5, 2020, Jeremy Miller discharged a firearm, and the bullet therefrom struck and killed Taylor Feick. On September 30, 2022, American Modern filed a motion for leave to intervene to protect its rights, duties, and obligations concerning an insurance policy it issued to the Millers. American Modern also filed an answer and counterclaim/crossclaim on that same date, attaching a copy of the insurance policy. On October 25, 2022, appellant, who did not oppose American Modern's motion to intervene, filed a response to American Modern's counterclaim and crossclaim. The court granted American Modern's motion to intervene on December 7, 2022. American Modern's counterclaim and crossclaim alleged that Jeremy Miller was indicted, prosecuted, and pled guilty to reckless homicide under R.C. 2903.041(A) and 2903.041(B) and to using a weapon while intoxicated under R.C. 2923.15(A) and 2923.15(B), in connection with Taylor Feick's death. Appellant and the Millers admitted this allegation in their responsive pleadings.

{¶4} American Modern then filed a Civ.R. 12(C) motion for judgment on the pleadings. The trial court issued an entry granting American Modern's motion, determining that the American Modern policy had both intentional acts and criminal acts

exclusions which applied to this case. The entry found that the American Modern policy does not provide coverage for the claims alleged against Jeremy Miller arising out of the shooting death of Taylor Feick and also that American Modern owes no duty to defend or indemnify Jeremy Miller for the claims alleged against him arising out of the shooting death of Taylor Feick. It is from this judgment that appellant appeals.

ASSIGNMENT OF ERROR

{¶5} Appellant does not explicitly set forth an assignment of error, despite his references to "summary of argument," "argument" and headings by topic. "App.R. 16(A)(3) and (4) require an appellant's brief to set forth an assignment of error and a statement of the issues." *Small v. Collins*, 2021-Ohio-301, ¶ 12 (4th Dist.), quoting *Redmond v. Wade*, 2017-Ohio-2877, ¶ 1, fn. 1 (4th Dist.), citing Painter and Pollis, *Ohio Appellate Practice* § 5:13 (2016 Ed.). "Appellant's failure to comply with the Appellate Rules allows us to disregard the assignment of error or to dismiss the appeal." *Id.* at ¶ 13 citing *Hart v. Hudson,* 2010-Ohio-5954, ¶ 11 (4th Dist.); *see Salisbury v. Smouse*, 2005-Ohio-5733, ¶ 11-12 (4th Dist.) ("It is within our judicial discretion to dismiss an appeal for a party's failure to comply with the Appellate Rules."). "However, 'it is a fundamental tenet of judicial review in Ohio that courts should decide cases on the merits.' " *Id.* quoting *Salisbury* at ¶ 12, quoting *DeHart v. Aetna Life Ins. Co.,* 69 Ohio St.2d 189, 192 (1982), citing *Cobb v. Cobb*, 62 Ohio St.2d 124 (1980). Because it is clear that appellant seeks reversal of the trial court's ruling on the Civ.R. 12(C) motion for judgment on the pleadings, we will address the issues he raises in his argument.

{¶6} Appellant appears to argue that the trial court erred by finding that the intentional acts exclusion applied as a matter of law because the intent to cause injury

or damage may be inferred only when that harm is intrinsically tied to the act of the insured.  Therefore, the trial court should have left the issue pending for disposition by a trier of fact.  Appellant also appears to argue that finding the intentional acts and criminal acts exclusions apply does not further public policy.  Therefore, appellant moves this court to reverse the trial court's judgment on the pleadings.

{¶7}    In response, American Modern asserts that a Civ.R. 12(C) motion for judgment on the pleadings is a proper procedural mechanism to resolve the question of law at issue here.  Next, American Modern argues that the language of the intentional acts exclusion in its policy precludes coverage for the damages sought against Jeremy Miller because his shooting Taylor Feick was an intentional act.  In addition, American Modern claims that the criminal acts exclusion in its policy precludes coverage for the damage sought against Jeremy Miller because of his pleading guilty to criminal offenses related to the death.  Finally, American Modern asserts that the trial court's decision is not contrary to public policy.  Therefore, American Modern moves this court to affirm the trial court's judgment entry.

A.  Law

1.  Standard of Review

{¶8}    "An appellate court conducts a de novo review of a trial court's grant of a Civ.R. 12(C) motion for judgment on the pleadings."  *Gaffin v. Haslam,* 2024-Ohio-2117, ¶ 15 (4th Dist.), citing *Gold v. Bertram*, 2023-Ohio-4567, ¶ 10.  "We review the judgment on the pleadings de novo, giving no deference to the trial court's judgment."  *Kesler v. JM Harper, LLC,* 2024-Ohio-1575, ¶ 13 (4th Dist.), quoting *Dolan v. Glouster*, 2007-

Ohio-6275, ¶ 7 (4th Dist.), citing *Fontbank, Inc. v. CompuServe, Inc.,* 138 Ohio App.3d 801, 807 (10th Dist. 2000).

### 2. Civ.R. 12(C)

**{¶9}** Civ.R. 12(C) provides, "Motion for Judgment on the Pleadings. After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "A court that considers a Civ.R. 12(C) motion for judgment on the pleadings 'must construe the material allegations in the complaint, along with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true.' " *Kesler* at ¶ 14, quoting *Leckrone v. Kimes Convalescent Ctr.,* 2021-Ohio-556, ¶ 8 (4th Dist.), quoting *Ohio Manufacturers' Assn. v. Ohioans for Drug Price Relief Act,* 2016-Ohio-3058, ¶ 10. (Citations omitted.) A court may enter judgment on the pleadings if it finds "that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief." *State ex rel. Lockard v. Wellston City Sch. Dist. Bd. of Edn.*, 2015-Ohio-2186, ¶ 6 (4th Dist.), citing *State ex rel. Midwest Pride IV, Inc. v. Pontious,* 75 Ohio St.3d 565, 570 (1996).

**{¶10}** "Determination of a motion for judgment on the pleadings is restricted solely to the allegations in the pleadings and any writings attached to the complaint." *Id.* citing *Peterson v. Teodosio,* 34 Ohio St.2d 161, 166 (1973). Civ.R. 7(A) specifies that "pleadings" are "a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint . . . and a third-party answer." "Motions, including a motion for judgment on the pleadings, are not pleadings as defined in Civ.R. 7(A)." *Kesler*, 2024-Ohio-1575, ¶ 15, citing *Pollack v. Watts*, 1998 WL 517702, *3 (5th Dist. Aug. 10, 1998).

**{¶11}** "In analyzing whether to consider documents attached to the complaint or the answer, we note that Civ.R. 10(C) allows a written instrument attached to a complaint or an answer to be part of the pleadings for all purposes." *Id.* at ¶ 16, quoting *Lockard* at ¶ 8. This court has construed the words "written instrument" as set forth in Civ.R. 10(C) specifically to include insurance policies. *Id.* citing *Lockard* at ¶ 8, quoting *Inskeep v. Burton,* 2008-Ohio-1982, ¶ 17 (2d Dist.).

### 3. Insurance Policies

**{¶12}** An insurance policy is a contract between the insurer and the insured. *Napier v. Ickes,* 2019-Ohio-2774, ¶ 38 (5th Dist.), citing *G&K Mgt. Servs., Inc. v. Owners Ins. Co.,* 2014-Ohio-5497, ¶ 19 (5th Dist.), citing *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.,* 2006-Ohio-6551, ¶ 23. Whether a claim is covered under an insurance policy is a question of law for the court to decide by applying the same rules as used in interpreting other types of contracts. *Id.*, citing *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.,* 64 Ohio St.3d 657, 665 (1992). "Where an insurance policy's provisions are clear and unambiguous, courts must apply the terms as written and may not enlarge the contract by implication to embrace an object distinct from that contemplated by the parties." *Travelers Prop. Cas. Corp. v. Chiquita Brand Int'l, Inc.,* 2024-Ohio-1775, ¶ 20 (1st Dist.), citing *Gomolka v. State Auto. Mut. Ins. Co.,* 70 Ohio St.2d 166, 168 (1982).

**{¶13}** When courts interpret a provision in a policy, "we look to the policy language and rely on the plain and ordinary meaning of the words used." *Krewina v. United Specialty Ins. Co.,* 2023-Ohio-2343, ¶ 23, quoting *Ward v. United Foundries, Inc.,* 2011-Ohio-3176, ¶ 18. "When the language of a written contract is clear, a court

may look no further than the writing itself to find the intent of the parties." *Id.,* quoting

*Sunoco, Inc. (R&M) v. Toledo Edison Co.,* 2011-Ohio-2720, ¶ 37. "If an insurance

contract is plain and unambiguous, the court does not go beyond the plain language of

the policy to determine the parties' rights and obligations; instead, it gives effect to these

plain and unambiguous terms." *Wayne Mut. Ins. Co. v. McNabb,* 2016-Ohio-153, ¶ 21

(4th Dist.) citing *Scarberry v. W. Res. Group*, 2015-Ohio-240, ¶ 11 (4th Dist.), and cases

cited therein. Further, while courts "read insurance-policy exclusions narrowly, 'that rule

of strict construction does not permit [us] to ignore the obvious intent of an exclusionary

provision.' " *Krewina* at ¶ 23, quoting *AKC, Inc. v. United Specialty Ins. Co.,* 2021-Ohio-

3540, ¶ 11. (Bracketed text in original.)

{¶14} "It is axiomatic that an insurance company is under no obligation to its

insured, or to others harmed by the actions of an insured, unless the conduct alleged of

the insured falls within the coverage of the policy." *Sheely v. Sheely,* 2012-Ohio-43,

¶ 20 (3d Dist.), quoting *Gearing v. Nationwide Ins. Co*., 76 Ohio St.3d 34, 36 (1996).

"Coverage is provided if the conduct falls within the scope of coverage defined in the

policy, and not within an exception thereto." *Id.*

B. Analysis

{¶15} In the instant case American Modern issued a homeowner's policy for

manufactured homes (hereinafter "the policy") to Tamea Miller, and Jeremy Miller was

listed as an insured. The policy, page 16 of 21, contained the following language:

1. Personal Liability And Medical Payment To Others

    We do not cover bodily injury or property damage:

    a. Resulting from intentional acts caused by or at the direction of any
       insured person. This applies whether or not the resulting bodily injury

or property damage was expected or intended. This exclusion applies even if the insured person is insane, intoxicated or otherwise impaired if a person without that impairment who committed such an act would otherwise be deemed to have acted with intent to cause bodily injury or property damage;

b. Arising out of any criminal act[.]

For purposes of our analysis, we refer to paragraph 1(a) of the policy cited above as the "intentional acts exclusion," and paragraph 1(b) of the policy cited above as the "criminal acts exclusion."

**{¶16}** Appellant claims that the intentional acts exclusion does not necessarily apply in this case as a matter of law and that the trier of fact must determine additional facts to ascertain whether the policy excludes coverage. In so doing, he urges us to apply the doctrine of inferred intent, as explained and described in *Allstate Ins. Co. v. Campbell.* 2010-Ohio-6312 and other cases.

**{¶17}** The doctrine of "inferred intent" has been described as follows:

Where there is no evidence of an insured's direct intent to cause harm and the insured denies the intent to cause any harm, the doctrine of inferred intent allows a court to infer an insured's intent to injure—thus barring coverage for accidents—as a matter of law on summary judgment where the insured's act "necessarily results" in the resulting harm." Where the insured's act does not necessarily result in harm and the insured denies that harm was intended or expected, there is an issue of fact of whether injury was expected or reasonably expected.

*Travelers Prop. Cas. Corp. v. Chiquita Brands Int'l, Inc*, 2024-Ohio-1775, ¶ 27 (1st Dist.), *appeal not allowed sub nom,* 2024-Ohio-3313, ¶ 27. (Citations omitted.) Further, as is set forth in *Campbell,* "the doctrine of inferred intent applies only in cases in which the insured's intentional act and the harm caused are intrinsically tied so that the act has necessarily resulted in the harm." *Campbell* at ¶ 56.

{¶18}   In *Campbell,* the case cited by the parties, a group of teenage boys stole a lightweight Styrofoam target deer typically used for shooting or archery and placed it just below the crest of a hill on a curvy two-lane road.  The boys remained in the area so they could watch the reactions of the motorists.  About five minutes after the boys placed the target, the driver drove over the hill and took evasive action, losing control of his vehicle which resulted in serious injuries to both the driver and a passenger.  The driver and passenger filed suits against the boys, their parents, and the insurance companies, among others, for the damages sustained in the crash.  *Campbell,* 2010-Ohio-6312 at ¶ 2-3.

{¶19}  The Supreme Court of Ohio held that "an insured's intent to cause injury or damage may be inferred only when that harm is intrinsically tied to the act of the insured—i.e., the action necessitates the harm."  *Campbell* at ¶ 48.  The Court reasoned in certain circumstances a factual inquiry is necessary to determine whether the insured's actions were excluded from coverage.  In *Campbell,* four insurers with differing policies were involved.  Three of the policies contained intentional acts exclusion language that stated the bodily injury or personal damage was not included in the policy if the result from an intentional act was "expected or intended" by an insured.  *Campbell* at ¶ 11-31.  The Court held "[b]ecause we do not infer the insureds' intent to harm as a matter of law and the boys deny that harm was intended or expected, whether the injury was expected or reasonably expected is an issue to be determined by the trier of fact."  *Campbell* at ¶ 58.

{¶20}  The Court also addressed the fourth policy involved in the case issued by American Southern.  That policy stated explicitly that coverage did not apply to " 'bodily

injury' or 'property damage' which results directly or indirectly from * * * an intentional act of any 'insured.' " *Campbell* at ¶ 60. The Court explained, "the American Southern policy is written in an extremely broad manner that declares that American Southern is not liable for harm resulting from any intentional act done by an insured." *Id.* The Court further explained that while the other three policies contained exclusions for an intentional or expected *injury*, American Southern's policy addressed an intentional *act*. *Campbell* at ¶ 61.

{¶21} The policy in the instant case is similar to the American Southern policy in *Campbell* where the Supreme Court of Ohio found the policy unambiguous and that American Southern had no duty to defend or indemnify the insured. *Campbell* at ¶ 61. The exclusionary language in American Modern's policy does not require an analysis of whether Jeremy Miller intended to cause harm, but, rather, requires a determination of whether the harm was caused by Jeremy Miller's intentional acts. The parties do not dispute that Jeremy Miller's actions caused Taylor Feick's harm. Therefore, the analysis of the doctrine of inferred intent is not required here. Thus, we find as a matter of law that the American Modern policy in the instant case does not include coverage for bodily injury or property damage resulting from an intentional act of the insured, regardless of whether it was expected or intended. Further, the uncontroverted fact that Jeremy Miller pled to both reckless homicide and using weapons while intoxicated, which are both criminal acts, precludes coverage based on the criminal acts exclusion in the policy.

{¶22} In addition, without citing case law in support, appellant argues both the intentional acts exclusion and the criminal acts exclusion are against public policy. In

response, American Modern has cited cases which have upheld such policies. American Modern points out that Ohio courts have held "[l]iability insurance does not exist to relieve wrongdoers of liability for intentional, antisocial or criminal conduct." *Chiquita Brands Intl., Inc. v. Nat'l Union Ins. Co.,* 2013-Ohio-759, ¶ 11 (1st Dist.), quoting *Gearing v. Nationwide Ins. Co.,* 76 Ohio St. 3d 34, 38 (1996); *see also, Travelers Prop. Cas. Corp. v. Chiquita,* 2024-Ohio-1775, ¶ 10 (1st Dist.) ("Ohio public policy generally prohibits obtaining insurance to cover damages caused by intentional torts").

{¶23} As to criminal acts exclusions, the Supreme Court of Ohio has observed, in dicta, that "unfettered application of criminal acts exclusions may mean that insurance companies can avoid their obligations under their policies whenever an insured also violates a criminal statue." *Allstate Ins. Co. v. Cartwright,* 1997 WL 368370, *4 (2d Dist. June 27, 1997). The Court goes on to explain that a broad provision could exclude minor traffic offenses and negligent acts, reaching "many injuries that are normally considered to be covered by insurance." *Id.*, *see also, Am. Fam. Mut. Ins. Co. v. Scott,* 2008-Ohio-1865, ¶ 18 (2d Dist.). However, Jeremy Miller's conviction of R.C. 2903.041(A), "reckless homicide" provides that "[n]o person shall *recklessly* cause the death of another." (Emphasis added.) "Recklessness has been held to be the functional equivalent of willfulness in the civil context." *State Farm Fire & Cas. Co. v. Condon,* 2005-Ohio-5208, ¶ 26, quoting *Nationwide Mut. Fire Ins. Co. v. Kubacko,* 124 Ohio App.3d 282, 288 (11th Dist. 1997). Thus, Jeremy Miller's actions in this case went

beyond "negligence," and were, at the minimum "reckless."[2] We therefore decline to make an exception in this case that American Modern's intentional acts and criminal acts exclusions contravene public policy.

## CONCLUSION

**{¶24}** As a result, we find that the trial court did not err in granting American Modern's Civ.R. 12(C) motion for judgment on the pleadings. Accordingly, we affirm the trial court.

**JUDGMENT AFFIRMED.**

---

[2] When considering a Civ.R. 12(C) motion, the court is limited to that information in the pleadings, and not the motion itself and the responses thereto. Even so, appellant expands on the facts in this case in his response to the Civ.R. 12(C) motion to say that the incident involved Jeremy Miller, who was intoxicated, playing a game of "quick draw" with what he thought was an unloaded pistol and the gun discharged, killing Taylor Feick. The *Cartwright* case, which also involved a shooting death, determined that "it is inherently dangerous for one who is only a few feet away from another to aim a gun within inches of the other person's body and to fire it, not to mention doing so in the dark after one has been drinking." *Cartwright,* 1997 WL 368370, *4. In the *Cartwright* case, which was decided before *Campbell*, the Court held that the criminal acts exclusion of the policy in that case required a finding that the harm was "reasonably expected to result from the crime." *Cartwright* at *6.

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS AFFIRMED and appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Abele, J.:  Concur in Judgment and Opinion.


For the Court,



BY: _____
Kristy S. Wilkin, Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**